**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO**

CASE NO. 13CV1206 SMV-RHS

FRANK BLACKMOON, and
ZIOMARA IBARRA-BLACKMOON,

Plaintiffs,

v.

ROBERT M. DOWNEY, P.A., and
ROBERT M. DOWNEY, an individual

Defendants.

**DEFENDANTS' MOTION TO DISMISS PLAINTIFFS' COMPLAINT FOR LACK OF PERSONAL JURISDICTION AND IMPROPER VENUE, OR TO TRANSFER VENUE UNDER 28. U.S.C. §1404; AND DECLARATION OF ROBERT M. DOWNEY IN SUPPORT THEREOF**

**COME NOW** Defendants Robert M. Downey, P.A., and Robert M. Downey, (hereinafter "Defendants") who move to dismiss Plaintiffs' Frank Blackmoon and Ziomara Ibarra-Blackmoon (hereinafter "Plaintiffs") First and Second Claims for Relief in the Complaint (DE #001) for lack of personal jurisdiction pursuant to Fed. R. Civ. P. 12(b)(2), for improper venue pursuant to Fed. R. Civ. P. 12(b)(3); or alternatively, to transfer to the Southern District of Florida pursuant to 28 U.S.C. §1404(a).

## FACTS

The facts of the case are firmly rooted in Florida. At all times relevant to the case Defendants were, and continue to be, residents of Florida. The parties' relationship began in Florida and ended in Florida. In 1998, the Plaintiffs, then residents of Florida, engaged

Defendants to perform legal services in Florida on a flat fee basis; namely, prosecution of a patent application that matured into U.S. Patent No. 6,337,318, B1 ("the patent"). In November 2001, approximately two months before the patent issued, Defendants made a demand to Plaintiffs to pay a past due balance of $4,304.50 by no later than December 15, 2001. See Dec. Robert M. Downey, paragraph 4 and Ex. A, Letter of Nov. 2001, attached thereto. When the patent issued in 2002, i.e., the point at which the parties' relationship terminated, the Plaintiffs, still residents of Florida, still owed Defendants over $4,000.00 in legal fees, which were to be paid in Florida. According to Defendants' records, these outstanding fees were never paid by Plaintiffs. See Dec. Robert M. Downey, paragraph 4 and Ex. A attached thereto. Shortly thereafter, Defendants sent Plaintiffs the letter attached as Exhibit D to the complaint (#001), again asking for payment of past due fees. The Plaintiffs never responded. On March 11, 2002 Defendants made yet another demand for payment. See Dec. Robert M. Downey, paragraph 4 and Ex. A, Letter of Mar. 2002, attached thereto. In February of 2005, as a courtesy, Defendants sent Plaintiffs notice that the 3.5 year maintenance fee was coming due on July 8 of that year. See Dec. Robert M. Downey, paragraph 6 and Ex. B attached thereto. Defendants notice was returned to sender with a forwarding address at 5725 SW 142 Ave, Miami, FL 33183. Id. Defendants then sent a second notice of the 3.5 year maintenance fee to the new address. Id. All of these letters were sent from Florida addresses to Florida addresses. Defendants received no response and no payment to be forwarded to the Patent & Trademark Office [hereinafter "PTO"] from the Plaintiffs.

Shortly thereafter, however, Defendants discovered that third inventor James J. Craig unilaterally paid the maintenance fee without notifying Defendants. See Dec. Robert M. Downey, paragraph 8 and Ex. C attached thereto. At this time, after being owed the unpaid legal

fees for, Defendants sent yet another letter to Plaintiffs, to the Florida forwarding address, again confirming the termination of the relationship. See Dec. Robert M. Downey, Ex. D attached thereto. This letter stated that Defendants were removing Plaintiffs' patent maintenance fee deadlines from Defendants' docket and that Plaintiffs would not receive courtesy notifications in the future. Id. All of this occurred in Florida.

Because the Plaintiffs had not contacted the Defendants since 2002 when the patent issued, Defendants had no knowledge that Plaintiffs moved to New Mexico in 2007. Defendants have had no contact, and have not attempted to contact the Plaintiffs since they sent the termination letter to Plaintiffs' Florida address. Furthermore, the Defendants have absolutely nothing to do with the State of New Mexico. The Defendants do not, and have never, transacted business in New Mexico. The Defendants have never represented a resident of New Mexico. The individual Defendant, Robert M. Downey, has never even visited New Mexico.

**ARGUMENT**

The Court should dismiss the action for lack of personal jurisdiction because the Plaintiffs fail to allege a transaction of business within New Mexico according to the Pelton test. Even assuming, *arguendo*, that Plaintiffs allegation satisfied the Pelton test, Plaintiff's entire cause of action does not arise out of the only transaction alleged to have taken place in New Mexico, as is required by the New Mexico long-arm statute. Lastly, Plaintiffs fail to make a prima facie showing that Defendants have minimum contacts with New Mexico sufficient to satisfy the Due Process clause of the U.S. Constitution.

1. **The Court Should Dismiss the Case for Lack of Personal Jurisdiction Pursuant to Fed. R. Civ. P. 12(b)(2)**

Paragraph 6 of the complaint (#001) states

> [T]his Court has *in personam* jurisdiction over Defendants pursuant to N. M. Stat. Ann. § 38-1-16 because Defendants knew Plaintiffs were residents of New Mexico, continued transacting business with Plaintiffs, and, ultimately Plaintiffs were permanently damaged as a proximate cause of the tortious acts of Defendants, and Defendants would certainly have a reasonable expectation to be held to the long arm of the law theory because Defendants are highly specialized and skilled attorneys that routinely transact legal business with clients in many different States throughout the United States and in many Foreign countries.

Federal Rule of Civil Procedure 12(b)(2) requires dismissal of an action when the court lacks personal jurisdiction over the defendant. "Where a defendant raises a timely challenge contesting personal jurisdiction, the plaintiff bears the burden of establishing that there is personal jurisdiction over the defendant and that the exercise of personal jurisdiction would not violate due-process requirements." Walker v. THI of N.M. at Hobbs Ctr., 801 F. Supp. 2d 1128, 1139 (D.N.M. 2011).

To establish jurisdiction over the Defendants, who do not reside in New Mexico, the court must first consider whether jurisdiction is authorized by New Mexico law. Because the New Mexico long-arm statute extends personal jurisdiction to the Constitutional limit, "if jurisdiction is consistent with the due-process clause, then New Mexico's long-arm statute authorizes jurisdiction over a nonresident defendant." Id at 1141.

To satisfy the requirements of the New Mexico long-arm statute, the court must use a three-prong test: (i) did the defendant commit an act or omission set forth in N.M.S.A. 1978, § 38-1-16; (ii) does the plaintiff's cause of action arise out of the alleged acts or omissions; and (iii) does the defendant have sufficient minimum contacts with New Mexico to satisfy due-process concerns. See Whiting v. Hogan, 855 F. Supp. 2d 1266, 1279 (D.N.M. 2012)(citing Tercero v. Roman Catholic Diocese, 132 N.M. 312, 316 (N.M. 2002)). New Mexico's long-arm Statute only provides for personal jurisdiction over a non-citizen of New Mexico in causes of action arising from one of five circumstances listed in the statute, only two of which are even

potentially relevant in this case and are mentioned in the complaint: (1) the transaction of any business within this state; and (2) the commission of a tortious act within this state. N.M.S.A. §38-1-16. In applying this test, the analysis of whether defendants transacted business or committed a tortious act within New Mexico generally merges with the inquiry regarding whether such activities constitute minimum contacts sufficient to satisfy due process concerns. See Tercero, 132 N.M. at 316-17 (citing Telephonic, Inc. v. Rosenblum, 88 N.M. 532, 534, (1975) and Tarango v. Pastrana, 94 N.M. 727, 728 (Ct. App. 1980)). However, if there are insufficient minimum contacts, the "commission of a tortious act" portion of the long-arm statute is not applicable. Taragno, 94 N.M. at 730.

The Plaintiffs' complaint fails to establish any of (1) a transaction of business within New Mexico, (2) a tortious act within New Mexico, (3) a cause of action arising from the alleged transaction of business or tortious act, or (4) sufficient minimum contacts between Defendants and New Mexico.

**a. Plaintiff's Complaint Fails to Allege a Transaction of Business within New Mexico**

As a threshold matter, it is worth noting that Plaintiffs do not present a shred of evidence that the 2008 meeting with Defendant referenced in paragraph 39 of the complaint – the only transaction alleged to occur after Plaintiffs became residents of New Mexico -- actually occurred. In fact, the Defendants deny that this meeting ever took place. However, even assuming Plaintiffs fabrication to be true, the allegation does not amount to a transaction of business within New Mexico pursuant to New Mexico law.

Plaintiffs allege in paragraph 6 of the complaint that "Defendants knew Plaintiffs were residents of New Mexico, [and] continued transacting business with Plaintiffs," which Plaintiffs erroneously believe fulfills the requirement in the long-arm statute of a "transaction of business

within New Mexico." The determination of whether a party transacted business in the state, within the meaning of the long-arm statute, "must be determined by the facts in each case." Caba Liab. Co. v. Mustang Software, Inc., 127 N.M. 556, 561 (N.M. Ct. App. 1999)(citing Telephonic, 88 N.M. at 534). Generally, a three-part test is used to determine whether certain conduct constitutes a transaction of business in New Mexico: (1) who initiated the transaction; (2) where the transaction was entered into; and (3) where the performance was to take place. See, e.g. Pelton v. Methodist Hosp., 989 F. Supp. 1392 (D.N.M. 1997); Caba Liab. Co.., 127 N.M. 556; Harrell v. Hayes, 125 N.M. 814 (N.M. Ct. App. 1998); Tercero v. Roman Catholic Diocese, 132 N.M. 312 (N.M. 2002). These three factors are generally implicit in New Mexico's case law on the subject. See Caba Liab. Co., 127 N.M. at 561. Furthermore, merely receiving "correspondence or a call from the defendant ... may be insufficient to constitute transacting business and to satisfy due process requirements as a matter of New Mexico law. Walker at 1141 (citing Diamond A Cattle Co. v. Broadbent, 84 N.M. 469, 471 (1973)).

Plaintiffs outright fail each of the three parts of the Pelton test on the face of their complaint. First, Plaintiffs plainly initiated the transaction with Defendants. It is never alleged, nor would it make sense, that Defendants, as an attorney and a law firm, initiated a transaction with a client; the nature of the relationship is that clients initiate transactions with attorneys to request legal services. The alleged transaction in question, discussed in paragraph 39 of the complaint, states that Plaintiffs met with Defendant to request services (*i.e.* initiated the transaction). Second, any and all alleged transactions (particularly the transaction alleged in paragraph 39 of the complaint) were entered into in Defendants' offices in *Florida*. Third, the alleged transaction was for legal services including ". . . to record said transfer, pay the assignment fees and to discuss having another patent search done for another invention they were

currently working on," all of which were to take place entirely by Defendants in *Florida*. It would clearly be unreasonable to consider this alleged business transaction to be "within New Mexico" because it had absolutely no relevant connection to New Mexico under New Mexico law.

**b. Plaintiffs' Complaint Fails to Allege a Cause of Action that Arises out of the Alleged Transaction of Business**

New Mexico's long-arm statute requires that the pled cause of action arise from the *same* transaction of business by which the nonresident-defendant allegedly submitted to the jurisdiction of the forum state. See Caba Liab. Co.., 127 N.M. at 565; N.M.S.A. §38-1-16.

The only alleged business transaction that Plaintiffs could even potentially argue satisfies the "transaction of business within New Mexico" requirement would be the alleged transaction in paragraph 39 of the complaint. Notably, Plaintiffs do not allege that this transaction occurred within New Mexico. The only basis for arguing this transaction falls under the statute would be merely that Defendants knew Plaintiffs were residents of New Mexico at the time of those transactions, which is wholly insufficient to establish a business transaction "within New Mexico" as explained both above and below. However, *even if* somehow such a transaction was considered "within New Mexico," the transaction alleged in paragraph 39 of the complaint is *entirely irrelevant* to Plaintiffs' causes of action. Plaintiffs are bringing breach of contract and professional negligence claims against Defendants that supposedly arose out of business transactions that occurred *entirely previously* to the transaction alleged in paragraph 39 of the complaint. The alleged paragraph 39 transaction, which by Plaintiffs' own words only includes ". . . to record said transfer, pay the assignment fees and to discuss having another patent search done for another invention they were currently working on,", had absolutely *nothing* in relation to the previous alleged duties of Defendants under either an alleged contract or alleged

professional obligation. Plaintiffs have outright failed to establish how any cause of action has arisen out of either (1) recording an assignment of patent rights, or (2) performing a patent search for "another invention." – the only transactions that allegedly occurred while Plaintiffs were residents of New Mexico. This Court cannot assume *in personam* jurisdiction using New Mexico's long-arm statute over Defendants based on a business transaction that gives no rise to any cause of action in the complaint.

**c. Plaintiffs have not otherwise made a prima-facie showing that Defendants have minimum contacts with New Mexico sufficient to satisfy Due-Process**

Plaintiffs allege in paragraph 6 of the complaint that Plaintiffs were permanently damaged as a proximate cause of the tortious acts of Defendants. However, Plaintiffs' alleged "injury," even if sustained in New Mexico, is not sufficient to establish that a tortious act occurred within New Mexico; the minimum contact requirement must still be met. Tarango, 94 N.M. at 728 (citing Hanson v. Denckla, 357 U.S. 235 (1958)). The minimum contacts test may be fulfilled in two ways. First, specific jurisdiction exists if the defendant "purposefully avails itself of the privileges of conducting activities within the forum State, thus invoking the benefits and protections of laws." Hanson, 357 U.S. at 255. Second, general jurisdiction lies when the defendants' contacts with the forum state are so "continuous and systematic" that the state may exercise personal jurisdiction over the defendant even if the suit is unrelated to the defendants' contacts with the state. See Helicopteros Nacionales de Colombia, S.A. v. Hall, 466 U.S.408, 415 (1984). It is insufficient if the contacts of the non-resident with the state are random, fortuitous, attenuated, or result from the unilateral activity of another party or a third person. See Pelton v. Methodist Hosp., 989 F. Supp. 1392, 1394-5 (D.N.M. 1997)(citing Hanson, 357 U.S. at 255). Rather, the minimum contacts must have a basis in "some act by which the defendant

purposely avails [himself] of the privilege of conducting activities within the forum state, thus invoking the benefits and protections of its laws." Id.

It is well-settled law in New Mexico that performing a personal service in another state for a known New Mexico resident does not constitute "purposefully availing [oneself] of the privilege of conducting activities" within New Mexico. See Beh v. Ostergard, 657 F. Supp. 173, 177 (D.N.M. 1987)(citing Tarango, 94 N.M. at 729). Unlike voluntary interstate or international economic activity, personal services "such as those rendered by attorneys" are directed at no particular place but to the needy person herself; it is the very nature of such services that their consequences will be felt wherever the person may choose to go. See Tarango, 94 N.M. at 729(citing Wright v. Yackley, 459 F.2d 287 (9th Cir. 1972)); See also, Pelton., 989 F. Supp. 1392; and Beh, 657 F. Supp. 173. The idea that tortious rendition of such services is a portable tort which can be deemed to have been committed wherever the consequences foreseeably were felt is wholly inconsistent with the public interest in having services of this sort available. Id. It would be fundamentally unfair to permit a suit in whatever distant jurisdiction the client may carry the consequences. See generally, World-Wide Volkwagen Corp. v. Woodson, 444 U.S. 286 (1980); See also Tarango, 94 N.M. at 729(citing Gelineau v. New York University Hospital, 375 F.Supp. 661 (D.N.J.1974); See also, Pelton., 989 F. Supp. 1392; and Beh, 657 F. Supp. 173. Unlike a case involving voluntary interstate or international economic activity, which is directed at the forum state's markets, the "residence of a recipient of personal services rendered elsewhere is irrelevant and totally incidental to the benefits provided by the defendant at his own location." Id. When a client travels to receive professional services without having been solicited, then the client, who originally traveled to seek services, ought to expect that he will

have to travel again if he thereafter complains that the services sought by him in the distant jurisdiction were therein rendered improperly. Id.

Here, Plaintiffs allege that merely because the alleged "injury" was felt by them while they resided in the State of New Mexico, Defendants are subject to long-arm *in personam* jurisdiction in New Mexico. Such an allegation directly contradicts the notion that unilateral activity by a plaintiff cannot establish sufficient minimum contacts with a forum by a defendant. Plaintiffs resided in Florida at the time the services were rendered per paragraph 27 of the complaint (#001), and ought to have expected that they would need to travel back to Florida if they wanted to complain that Defendants' services were rendered improperly. In Tarango, the court found that a woman who had a medical procedure performed at a hospital in Texas and thereafter allegedly suffered injury back home in New Mexico as a result of the procedure being improperly performed could *not* use New Mexico's long-arm statute to establish *in personam* jurisdiction over the Texas hospital because the woman's seeking of personal services in Texas was a unilateral activity. The court explicitly acknowledged that the hospital knew that the woman was a citizen of New Mexico, but such knowledge was not relevant to establishing tortious conduct within New Mexico. Similarly, in Beh, a doctor in California implanted an I.U.D. in a woman who then returned to New Mexico and developed complications; the doctor was found not to have minimum contacts with New Mexico merely because of his personal service provided in California. Plaintiffs here are asking this Court to ignore the law established in the Beh and Tarango decisions by allowing Plaintiffs' unilateral activity of seeking Defendants' services to establish *in personam* jurisdiction over Defendants in New Mexico, a state where Defendant has never acted in or towards, despite the fact that such exercise of jurisdiction would be neither fair nor just to Defendants.

Unlike the Defendants, who have never acted in or towards New Mexico in any fashion, Plaintiffs specifically sought Defendants' personal services *in Florida* and certainly should have expected that any cause of action against Defendants would have to be brought there.

There can be no specific jurisdiction because there is no alleged act by which Defendants availed themselves of the privilege of conducting activities within New Mexico because any and all alleged agreements and contracts by Defendants relating to the patent-in-question occurred *prior* to Plaintiffs' move to New Mexico. Plaintiffs also argue in paragraph 6 of the complaint that "Defendants would certainly have a reasonable expectation to be held to the long arm of the law theory because Defendants are highly specialized and skilled attorney's [sic] that routinely transact legal business with clients in many different States throughout the United States and in many Foreign countries." Defendants simply could not have anticipated that services provided to multiple Florida clients would eventually lead to New Mexico. With this argument, Plaintiffs assert that Defendants should be subject to *in personam* jurisdiction in *any* state or country merely because Defendants' business dealings routinely involve clients who are not from Florida. While not only contradicting the established law in *e.g.* Beh and Tarango, such an argument would effectively remove almost any burden of proving *in personam* jurisdiction. Furthermore, such a rule would be overwhelmingly restrictive on interstate commerce because businesses would be compelled to limit themselves to intrastate dealings to avoid litigation that could be brought anywhere in the world. There is clearly no room in the law for such a rule. Therefore, even if, *arguendo*, a contract or obligation had been created regarding the services for the patent, such contract or obligation occurred prior to Plaintiffs' move to New Mexico and thus gave Defendants no reasonable basis for anticipating legal action in New Mexico or expecting the benefit of New Mexico state law.

Furthermore, there is no general jurisdiction. The only factual assertion in Plaintiffs' complaint that could possibly support a finding of general jurisdiction is the fact that Defendants operate a website accessible in New Mexico. However, the New Mexico Court of Appeals has decided that operation of a website that is accessible in New Mexico, without more, does not support a finding of general jurisdiction. To wit:

> [Plaintiffs] claim that [Defendant] advertised its services by means of its website and that internet publication "is equivalent to advertising in a nationally circulated magazine." We disagree. Establishment of a passive website that can be viewed internationally is not sufficient to support general personal jurisdiction absent some showing that the website targeted New Mexico. See GTE New Media Servs. Inc. v. Bellsouth Corp., 339 U.S. App. D.C. 332, 199 F.3d 1343, 1349-50 (D.C. Cir. 2000) ("[P]ersonal jurisdiction surely cannot be based solely on the ability of [forum] residents to access the defendants' websites, for this does not by itself show any persistent course of conduct by the defendants in the [forum]."). Plaintiffs have not made any such showing.
>
> Zavala v. El Paso County Hosp. Dist., 143 N.M. 36, 44 (N.M. Ct. App. 2007)

Like the Defendant in Zavala, the Defendants in the case at hand operate a website that is accessible to forum residents. And like the Defendant in Zavala, the Defendants in the case at hand do not specifically target their website towards New Mexico or residents thereof. Thus, neither specific nor general jurisdiction over the defendants may be found in the District of New Mexico.

Lastly, although the Plaintiffs have not alleged any communications sent by Defendants to New Mexico, any such allegations in the future would still fail to establish sufficient minimum contacts. It is well established law that minimum contacts are not necessarily established simply because a plaintiff's move into a state requires the defendant to send telephone calls and other forms of communications into that forum. See, e.g. Rambo v. American Southern Ins. Co., 839 F.2d 1415, 1420 (10th Cir. Okla. 1988); Dagen v. Book, 249 F.R.D. 362, 366 (D. Colo. 2008); Far West Capital, Inc. v. Towne, 46 F.3d 1071, 1076-77 (10th Cir. 1995).

**2. The Court Should Dismiss the Case for Improper Venue Pursuant to Fed. R. Civ. P. 12(b)(3)**

The Plaintiffs allege that venue is proper in the District of New Mexico pursuant to 28 U.S.C. §1391(b) " because a substantial part of the events, the tort, and a substantial part of the property, the utility patent, giving rise to the claim alleged herein are situated in or occurred within this judicial district."

Presumably, Plaintiffs are alleging that venue is proper pursuant to 28 U.S.C. §1391(b)(2), which states "A civil action may be brought in… a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred, or a substantial part of property that is the subject of the action is situated." First, Plaintiffs allege that the "tort" – Defendants' failure to notify the PTO of address changes – occurred in New Mexico, which supports venue in the District of New Mexico. However, as argued at length in sections 1(a) and 1(b), supra, the events relevant to the alleged tort began and ended outside of the District of New Mexico. Any contact between Defendants, in Florida, and the PTO, in Virginia, would not have had any relation to New Mexico. Furthermore, as discussed in section 1(c), supra, the Plaintiffs' decision to move to New Mexico after all of the alleged relevant events giving rise to this cause of action does not, by itself, support an allegation that a tortious act has "occurred" in New Mexico merely because the alleged "injury" occurred after the move. Such an impractical rule would leave Defendants and all other providers of personal services exposed to legal action in *any state* to which a client, patient etc. decides to move. As previously discussed, courts have expressed that alleged tortious acts arising out of a personal service, such as the service of an attorney or physician, cannot reasonably be considered "portable torts" that are "committed" wherever the consequences foreseeably were felt. See Tarango, 94 N.M. at 729(citing Wright v. Yackley, 459 F.2d 287 (9th Cir. 1972)). The "events or omissions giving rise to the claim

occurred" referred to in 28 U.S.C. §1391(b)(2) are, in this case, the alleged acts or omissions *by the Defendants*, all of which allegedly occurred in *Florida*, and *none* of which have any relevance to New Mexico. Thus, there is no possibility that Defendants could have committed a tort in New Mexico for purposes of venue under 28 U.S.C §1391(b)(2).

Second, Plaintiffs dubiously claim that a substantial part of property – the utility patent – is "situated" in the District of New Mexico. However, a utility patent is a legal construct – nothing more than a proclamation of an exclusive right. See U.S. Const. Art. I, §8, cl. 8. If the right can be said to have a location, then allowing that location to control venue would be manifestly unfair and inequitable. A Plaintiff would be free to obtain the right in one state, then move to another state that has absolutely no connection to the original transaction, any subsequent transactions, the defendant, or the defendant's place of business, and yet subject him to venue in that district merely because that is where the Plaintiff has brought his property right. This notion is plainly incongruous with the laws of the United States. See, e.g., 28 U.S.C. §1400 (providing venue in patent infringement cases in any district where the *defendant* resides, or where the *defendant* committed acts of infringement *and* had a regular and established place of business).

Moreover, not only is the legal construct of the patent not subject to being situated in a particular state, 28 U.S.C. §1391(b)(2) requires that "the substantial part of the property" be "the subject of the action." This action is for alleged (1) breach of contract and (2) professional negligence, both of which are only *tangentially* related to the expired patent but neither of which directly concern it. Rather, unlike a dispute between two parties over property rights (in which case the property itself would be the "subject" of the action because the outcome of the case could affect the rights to the property), the "subject" of this action is the Defendants' alleged

conduct. The true subject of this action is the Defendant's contractual and professional duty to Plaintiffs after the patent issued.

### 3. Alternatively, Transfer to the Southern District of Florida is Appropriate

In the event that this case is not dismissed for the foregoing reasons, the Defendants request that this Court transfer venue of this action to the Southern District of Florida.

"For the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought." 28 U.S.C. §1404(a). As a threshold matter, the Plaintiffs could have filed in the Southern District of Florida because personal jurisdiction over the Defendants exists in the Southern District of Florida. Secondly, in deciding a motion to transfer venue, the Court must weight a number of factors. These factors include: (1) the plaintiff's choice of forum; (2) the convenience and location of witnesses and other sources of proof; (3) the cost of making the necessary proof; (4) questions as to the enforceability of a judgment if one is obtained; (5) relative advantages and obstacles to a fair trial; (6) difficulties that may arise from congested dockets; (7) the possibility of the existence of questions arising in the area of conflict of laws; (8) the advantage of having a local court determine questions of local law; and,(9) all other considerations of a practical nature that make a trial easy, expeditious, and economical. See Chrysler Credit Corp. v. Country Chrysler, Inc., 928 F.2d 1509, 1516 (10th Cir. Okla. 1991). These considerations of convenience and the interests of justice weigh heavily in favor of transfer to the Southern District of Florida.

#### a. The convenience and location of witness and other sources of proof favors transfer to the Southern District of Florida

The convenience of witnesses is the most important factor in deciding a motion under § 1404(a). Cook v. Atchison, Topeka & Santa Fe Ry. Co., 816 F. Supp. 667, 669 (D. Kan. 1993)(citing Buckley v. McGraw-Hill, Inc., 762 F. Supp. 430, 440 (D. N.H. 1991)). All of the

witnesses, with the exception of Plaintiffs are located in Florida. The Defendants are located in Florida. Upon belief, the third named inventor on the patent, as well as any potential third-party witnesses, such as associates or paralegals that were in Defendants' employ at the time of the alleged tort also reside in Florida. Thus, a trial in the Southern District of Florida would facilitate live testimony from the most relevant witnesses who are outside the subpoena power of this Court to compel attendance at trial. Even so, "[t]he fact that witnesses [are] *able* to fly to other states where necessary does not speak to the convenience of a forum…" Doe v. NOSF, Inc., 2012 U.S. Dist. LEXIS 183966, 6 (D.N.M. Dec. 17, 2012)(emphasis original). Furthermore, travel to New Mexico for trial of this matter would be extremely disruptive to Defendants' legal practice. Moreover, all of Defendants' documentation pertaining to the case is located in the Southern District of Florida.

**b. The cost of making such proof available in New Mexico favors transfer to the Southern District of Florida**

Because the witnesses, and all of Defendants' documentation would have to be transported from Florida to New Mexico, a distance of almost 2,000 miles for each appearance, the cost simply to appear in the District of New Mexico would be prohibitive, not only in monetary outlays, but also in lost earnings to the Defendant, who would no doubt have to take two days travel time for each appearance. Thus, this factor weighs in favor of transfer to the Southern District of Florida.

**c. The Southern District of Florida docket is less congested than that of the District of New Mexico**

It is worth nothing that a comparison of the judicial caseload of the Southern District of Florida and the District of New Mexico weighs in favor of a transfer. According to the 2013 statistics on the www.uscourts.gov website, there exists a disparity between the two courts in

time spent between filing to trial in civil cases. For the District of New Mexico, the statistics indicate an 8.6 month median, while the Southern District of Florida reported only a 5.2 month median time from filing to disposition. Furthermore, as of September 30, 2013 there were 426 pending cases per Judgeship in the District of New Mexico, compared to 393 in the Southern District of Florida. This factor, emphasizing judicial economy, weighs in favor of transfer.

**d. The potential conflict-of-laws favors transfer to the Southern District of Florida**

"In a diversity action, courts prefer the action to be adjudicated by a court sitting in the state that provides the governing substantive law." Emplrs Mut. Cas. Co. v. Bartile Roofs, Inc., 618 F.3d 1153, 1169 (10th Cir. Wyo. 2010)(citing Tex. E. Transmission Corp. v. Marine Office-Appleton & Cox Corp., 579 F.2d 561, 567-68 (10th Cir. 1978).

Plaintiffs allege two state law causes of action: breach of contract and professional negligence. The New Mexico Supreme Court has announced that it follows the doctrine of *lex loci delicti* in tort and applies the law of the state in which the allegedly wrongful conduct occurred. See Torres v. State, 119 N.M. 609, 613 (1995). Under the rule, the place of the wrong is "the location of the last act necessary to complete the injury." *Id.* In this case, the last act necessary to complete the alleged injury was Defendants alleged failure to inform the PTO of his change of address, which occurred in Florida. Thus, according to New Mexico's choice of law rules, the action for professional negligence will be governed by Florida law and there is significant public interest in having a Florida court determine questions of Florida law.

As far as the breach of contract action, the contract was formed in Florida, performed in Florida, and terminated in Florida. At no point during the duration of the representation did the Defendant perform any of its duties in New Mexico, or in a manner that would have given New Mexico a significant interest in adjudication of the Plaintiff's breach of contract claims.

**e. The advantage of having a local court determine questions of local law favors transfer**

"When the merits of an action are unique to a particular locale, courts favor adjudication by a court sitting in that locale." Emplrs Mut. Cas. Co, 618 F.3d at1170 (citing Black & Veatch Constr., Inc. v. ABB Power Generation, Inc., 123 F. Supp. 2d 569, 581 (D. Kan. 2000); and Bailey v. Union Pac. R.R. Co., 364 F. Supp. 2d 1227, 1233 (D. Colo. 2005)("There is a local interest in having localized controversies decided at home." (internal quotation marks omitted)). In the case at hand, the contract was formed in Florida, performed in Florida, and terminated in Florida. The parties' relationship was formed in Florida and terminated in Florida, before the Plaintiffs moved to New Mexico. This case is intrinsically rooted in Florida and should be given the advantage of having a local court determine the local questions of law. Thus, this factor weighs in favor of transfer.

**RECITATION**

Plaintiffs were contacted twice by email and once by phone by Defendants' counsel for their position on this matter. The emails were not responded to and a return phone call was never received. Thus, it is assumed Plaintiffs oppose the relief sought in this Motion.

**CONCLUSION**

For the foregoing reasons, the Defendants' Motion to Dismiss should be granted pursuant to Rules 12(b)(2) and 12(b)(3). Accordingly, the Plaintiffs' First and Second claims should be dismissed. In the alternative, this action should be transferred to the Southern District of Florida pursuant to 28 U.S.C. §1404(a).

Respectfully submitted,

BEALL & BIEHLER

By: *\/s/ Josh A. Harris*
Josh A. Harris
Attorneys for Defendants
6715 Academy NE
Albuquerque, NM 87109
505/828-3600
505/828-3900 *fax*

I hereby certify that a true and correct copy of the foregoing was sent via electronic mail to:

Frank Blackmoon
Ziomara Ibarra-Blackmoon
HC-61 Box 3011
Ramah, NM 87321
Phone: 505-903-9657
Fax: 505-775-3042

on this **17th** day of **January, 2014**.

*\/s/ Josh A. Harris*
*Josh A. Harris*

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF NEW MEXICO**

CASE NO. 13CV1206 SMV-RHS

FRANK BLACKMOON, and
ZIOMARA IBARRA-BLACKMOON,

Plaintiffs,

v.

ROBERT M. DOWNEY, P.A., and
ROBERT M. DOWNEY, an individual

Defendants.

_______________________________/

**DECLARATION OF ROBERT M. DOWNEY**

I, ROBERT M. DOWNEY, being of full age, hereby declare under penalty of perjury and to the best of my knowledge state as follows.

1. I submit this declaration in support of Defendants' Motion to Dismiss.
2. I am the President and sole shareholder of Robert M. Downey, P.A.
3. I prepared and prosecuted a patent application entitled Programmable Electromechanical Lock With Digital Display which matured into U.S. Patent. No. 6,337,618 B1 ("patent") for and at the direction of the Plaintiffs and co-inventor James J. Craig.
4. At the time of issuance of the patent, the Plaintiffs and James J. Craig had accrued approximately $4,200.00 for my legal fees and expenses, which had not been paid, despite my written demand for payment. See Exhibit A. Contrary to the allegation in paragraphs 58 and 65 of Plaintiff's Complaint, I was not timely paid for my legal fees and expenses. See Exhibit A. To the best of my knowledge, this past due balance of approximately $4,200.00 owed by Plaintiff's and James J. Craig has still not been paid.

5. When I sent Plaintiffs a copy of their issued patent in January 2002, I informed Plaintiffs of the deadlines for all three maintenance fee payments that would need to be made to the U.S. Patent Office in order to keep the patent in force and I advised Plaintiffs to docket these deadlines themselves to avoid any confusion. See Exhibit D to the Complaint (DE #001).

6. In the year 2005, I attempted to contact the Plaintiffs and James J. Craig on several occasions regarding payment of the 3.5 year maintenance fee, but I never received a response or payment from either Plaintiffs or James J. Craig. See Exhibit B.

7. Contrary to the allegation in paragraph 34 of Plaintiff's complaint, I never received any payment from either Plaintiffs or James J. Craig for the 3.5 year maintenance fee due to the U.S. Patent Office or my fee, which together totaled the sum of $695.00. See Exhibit B.

8. I eventually discovered that co-inventor James J. Craig paid the 3.5 year maintenance fee directly to the U.S. Patent Office without either James J. Craig or Plaintiffs informing me. See Exhibit C.

9. I have never received any notifications of change of address from the Plaintiffs. I have had no contact with Plaintiffs since they began residing in New Mexico, until James J. Craig came to my office on June 10, 2013 for the purpose of informing me of Plaintiff's intent to file this lawsuit and to inquire whether I had legal malpractice insurance. At that meeting, James J. Craig called Plaintiffs on his personal cellular phone. At the time of placing this telephone call to Plaintiffs, James J. Craig informed me that Plaintiffs now lived in New Mexico. This is the first time I learned that Plaintiffs had moved from Miami to New Mexico.

10. I did not prepare the assignment attached as Exhibit E to the Complaint (DE #001).

11. I did not receive, for recording, the assignment attached as Exhibit E to the Complaint (DE #001).

12. I was not paid to record the assignment attached as Exhibit E to the Complaint (DE #001).

13. Contrary to the allegation in paragraph 39 of Plaintiffs Complaint, I had neither a meeting nor a discussion with Plaintiffs on or about 17 January 2008.

14. I do not currently, nor have I ever, to the best of my knowledge, conducted business in the State of New Mexico.

15. I do not advertise in the State of New Mexico, other than operation of a passive website which is accessible therefrom, but has never, in any manner, specifically targeted residents of New Mexico. There has never been any mention of New Mexico or reference to residents of New Mexico on my firm's website since my firm first established a website on the Internet.

16. Repeated travel to and from New Mexico, particularly during the work week, would significantly disrupt my legal practice.

17. To the best of my knowledge, all material third-party witnesses reside in the State of Florida.

18. I have never driven a car in the State of New Mexico or visited the State of New Mexico.

19. I have never had an office or place of business in the State of New Mexico.

20. I have never owned real estate or rented real property in the State of New Mexico.

21. I have never advertised in New Mexico newspapers, magazines, or other publications.

22. I am not licensed to practice law in the State of New Mexico.

23. I am a citizen and resident of the State of Florida.

24. Robert M. Downey, P.A. was organized and exists under the laws of the State of Florida.

Pursuant to 28 U.S.C. §1746, I hereby declare under penalty of perjury that the foregoing statements made by me are true and correct to the best of my knowledge.

Dated: January 16, 2014

Robert M. Downey, individually and
on behalf of Robert M. Downey, P.A.

State of Florida
County of Palm Beach

Sworn and subscribed to before me
this 16th day of January, 2014.

Notary Public

✓ Personally known

Or

____ Identification Produced
(specify type)


PATRICIA DYANNE CLIFTON
Commission # FF 002232
Expires July 28, 2017
Bonded Thru Troy Fain Insurance 800-385-7019

Box 137

**ROBERT M. DOWNEY, P.A.**
150 EAST PALMETTO PARK ROAD
SUITE 350
BOCA RATON, FLORIDA 33432-4832
(561) 417-4771
FACSIMILE (561) 417-0198

ROBERT M. DOWNEY
REG. PATENT ATTORNEY
FLORIDA BAR
ANGELA M. MALLOY
FLORIDA BAR

PATENT AND TRADEMARK MATTERS

March 11, 2002

Frank and Ziomara Castellanos
8201 S.W. 107th Avenue, Unit B
Miami, FL 33173

RE: Outstanding invoices - CASFPA199, CASFFP100

Dear Frank and Ziomara:

There still remains a balance totaling $4,194.95 (see enclosed invoices) for fees and expenses in connection with your U.S. and International Patent Application files.

As you know, this balance has been outstanding for quite a long time now. While I have been patient, I must now insist on payment, in full, by no later than March 25, 2002.

For your convenience, we accept all major credit cards. You may call our office with your credit card number and we will be glad to settle this debt by telephone. Otherwise, please forward your check totaling $4,194.95 at this time.

Very truly yours,

ROBERT M. DOWNEY, P.A.

Robert M. Downey

RMD/km
Encls.
cc: James J. Craig



ROBERT M. DOWNEY, P.A.
150 EAST PALMETTO PARK ROAD
SUITE 350
BOCA RATON, FLORIDA 33432-4832
(561) 417-4771
FACSIMILE (561) 417-0198

ROBERT M. DOWNEY
REG. PATENT ATTORNEY
FLORIDA BAR
ANGELA M. MALLOY
FLORIDA BAR

PATENT AND TRADEMARK MATTERS

November 13, 2001

Francisco and Ziomara Castellanos
8201 S.W. 107th Ave., Unit B
Miami, FL 33173

RE: U.S. Patent Application for Digital Lock
Our Ref: CASFPA199
PCT Application for Digital Lock
Our Ref: CASFFP100

Dear Frank and Ziomara:

As you are aware, there remains a balance due and owing which totals $4,304.50 for fees and expenses in connection with the U.S. Patent Application and the PCT International Patent Application.

Previously, I had agreed to a delayed payment schedule and I hope this has been helpful to you. Unfortunately, I am unable to defer receipt of payment to an indefinite time in the future. Accordingly, I must insist on receiving payment, in full, by no later than **December 15, 2001**.

Should you have any questions or concerns, please feel free to call me at your soonest convenience.

Kindest regards,

Very truly yours,

ROBERT M. DOWNEY, P.A.

Robert M. Downey

RMD/km

ROBERT M. DOWNEY, P.A.
150 EAST PALMETTO PARK ROAD
SUITE 350
BOCA RATON, FLORIDA 33432-4832
(561) 417-4771
FACSIMILE (561) 417-0198

ROBERT M. DOWNEY
REG. PATENT ATTORNEY
FLORIDA BAR
ANGELA M. MALLOY
FLORIDA BAR

PATENT AND TRADEMARK
MATTERS

November 13, 2001

James J. Craig
785 N.E. Harbour Drive
Boca Raton, FL 33431

RE: U.S. Patent Application for Digital Lock
Our Ref: CASFPA199
PCT Application for Digital Lock
Our Ref: CASFFP100

Dear James:

As you are aware, there remains a balance due and owing which totals $4,304.50 for fees and expenses in connection with the U.S. Patent Application and the PCT International Patent Application.

Previously, I had agreed to a delayed payment schedule and I hope this has been helpful to you. Unfortunately, I am unable to defer receipt of payment to an indefinite time in the future. Accordingly, I must insist on receiving payment, in full, by no later than **December 15, 2001**.

Should you have any questions or concerns, please feel free to call me at your soonest convenience.

Kindest regards,

Very truly yours,

ROBERT M. DOWNEY, P.A.

Robert M. Downey

RMD/km

LAW OFFICE OF
Robert M. Downey
A PROFESSIONAL ASSOCIATION
Patent & Trademark Matters

...ll S. Federal Highway
Suite 300
Boca Raton, Florida 33432-6031
Telephone: (561) 417-4771
Facsimile: (561) 417-0198
E-mail: bocapatents@aol.com

Robert M. Downey
Reg. Patent Attorney
Florida Bar
Angela M. Malloy
Florida Bar

February 24, 2005

James J. Craig
785 N.E. Harbour Drive
Boca Raton, FL 33431

Francisco Castellanos
Ziomara Castellanos
8201 S.W. 107th Ave., Unit B
Miami, FL 33173

Sent again to both 5.18.05 no response

Re: Patent No.: US 6,337,618 B1
Granted: Jan. 8, 2002
Our Ref.: M-FEE

Dear Sirs:

Please be advised that a maintenance fee is due in the U.S. Patent Office on the above-referenced patent by the 3-1/2 year anniversary date of the patent, July 8, 2005, to keep your patent in force.

The fees and expenses in connection with payment of the maintenance fee will be $695.00, which includes our fee. If you wish to keep your patent in force, please forward your authorizing payment well before **July 8, 2005** so that we may attend to payment of the maintenance fee. *(Please note that the amount quoted herein is based on the most recent U.S. Patent and Trademark Office fee schedule. In the event of an increase in fees by the U.S. Patent and Trademark Office, the amount due from you would be adjusted to reflect that increase. Therefore, you may want to take advantage of the lower rate by paying this fee as soon as possible.)*

You do have the option of paying the maintenance fee after the 3-1/2 year anniversary date, but with a $65.00 surcharge. However, the maintenance fee and surcharge must be paid on or before the 4 year anniversary date, January 8, 2006 or your patent will expire. You cannot pay the maintenance fee after the 4 year anniversary date.

Please let us have your instructions on this matter.

Sincerely,
ROBERT M. DOWNEY, P.A.

RMD:ad

Robert M. Downey



RMD LAW OFFICE OF
Robert M. Downey
A PROFESSIONAL ASSOCIATION
601 S. Federal Highway
Suite 300
Boca Raton, Florida 33432-6031




Francisco Castellanos
Ziomara Castellanos
8201 S.W. 107th Ave., Unit B
Miami, FL 33173

resent to

CAST201 331730258 1304 05 03/03/05
FORWARD TIME EXP RTN TO SEND
CASTELLANOS
5725 SW 142ND AVE
MIAMI FL 33183-1010

33432/6004



LAW OFFICE OF

# Robert M. Downey

A PROFESSIONAL ASSOCIATION

Patent & Trademark Matters

601 S. Federal Highway
Suite 300
Boca Raton, Florida 33432-6031
Telephone: (561) 417-4771
Facsimile: (561) 417-0198
E-mail: bocapatents@aol.com

Robert M. Downey
Reg. Patent Attorney
Florida Bar

Angela M. Malloy
Florida Bar

July 19, 2005

James J. Craig
785 N.E. Harbour Drive
Boca Raton, FL 33431

Francisco Castellanos
Ziomara Castellanos
5725 S.W. 142 Avenue
Miami, FL 33183

Re: Patent No. US 6,337,618 B1
Granted: Jan. 8, 2002
Our Ref.: M-Fee

Dear Sirs:

We have received no response to our several maintenance fee reminders sent to you in February and May of 2005.

We have discovered that you attended to the timely payment of the 3-1/2 year maintenance fee to the U.S. Patent and Trademark Office due by July 8, 2005 on your own, and you did not inform us of this payment.

Since you have failed to communicate with our office, you have not paid our fees and you have demonstrated a desire and ability to handle your maintenance fee payments to the U.S. Patent and Trademark Office on your own, we will remove your patent maintenance fee due dates from our docketing and reminder system; and we will not send any letters or reminders about any further maintenance fees due in connection with the above-referenced patent, and we will take no further action in connection with this matter.

Therefore, you should be sure to calendar the 7-1/2 and 11-1/2 year maintenance fees due in connection with the above-referenced patent. **We are not responsible for any missed maintenance fee payments required to keep your patent in force.**

Sincerely,

ROBERT M. DOWNEY, P.A.

RMD:ll

*Robert M. Downey*





UNITED STATES PATENT AND TRADEMARK OFFICE

OFFICE OF THE GENERAL COUNSEL

August 1, 2013

**VIA U.S. MAIL**
Mr. Robert Downey
Robert M. Downey, P.A.
6751 N. Federal Highway
Suite 300
Boca Raton, FL 33487

***Re: Freedom of Information Act (FOIA) Request No. F-13-00219***

Dear Mr. Downey:

The United States Patent and Trademark Office (USPTO) FOIA Office received your e-mail dated July 11, 2013 in which you requested, under the provisions of the Freedom of Information Act, 5 U.S.C. § 552, a copy of:

> Information with respect to the 4 year maintenance fee paid on 7/5/2005 in connection with U.S. Patent No. 6,337,618 to include the following:
>
> - The identity of the person that paid the 4 year maintenance fee on 7/5/2005;
> - The way by which the 4 year maintenance fee was paid on 7/5/2005;
> - The manner of payment of the 4 year maintenance fee on 7/5/2005;
> - The name of the credit card holder, or on the check, that paid the 4 year maintenance fee on 7/5/2005;
> - The amount paid for the 4 year maintenance fee;
> - A photocopy of the manner of payment information; and
> - All other information identifying and confirming the identity of the person who paid the 4 year maintenance fee and the manner the 4 year maintenance fee was paid on 7/5/2005.

The USPTO identified two pages of documents that are responsive to your request. A copy of the material is enclosed. Portions of the material however were redacted pursuant to Exemption (b)(6) of the FOIA.

The credit card number was redacted pursuant to Exemption (b)(6) of the FOIA, which permits the withholding of "personnel and medical files and similar files the disclosure of which would constitute a clearly unwarranted invasion of personal privacy." 5 U.S.C. § 552(b)(6). The term "similar files" has been broadly construed to cover "detailed Government records on an



individual which can be identified as applying to that individual." Dep't of State v. Washington Post, 456 U.S. 595, 601 (1982). Information that applies to a particular individual meets the threshold requirement for Exemption (b)(6) protection. Id. at 602. The privacy interest at stake belongs to the individual, not the agency. See Dep't of Justice v. Reporter's Comm., 489 U.S. 749, 763-65 (1989). This provision requires a balancing of an individual's right to privacy against the public's right to disclosure. Dep't of the Air Force v. Rose, 425 U.S. 352, 372 (1976). If the requested information has no link to a specific individual, no privacy interest is implicated. Citizens for Envt'l Quality, Inc. v. Dep't of Agric., 602 F.Supp. 534, 538 (D.D.C. 1984).

Here, the credit card number is directly tied to an individual's personal financial information and as such, can be a potential source for abuse by unauthorized individuals. The burden is on the requester to establish that disclosure would serve the public interest. See Bangoura v. Dep't of the Army, 607 F.Supp.2d 134, 148-49 (D.D.C. 2009). Here the withheld information does little to shed light or contribute significantly to public understanding of the operations or activities of the Agency, as it pertains solely to a mechanism by which an entity is able to pay for an activity or service. As such, disclosure of this information would lead to unauthorized use and serves little to further understanding of the Agency's performance of its statutory duties. Reporter's Comm., 489 U.S. at 773.

The FOIA request does not assert a public interest that outweighs the privacy interest, nor is a public interest otherwise evident. Since the privacy interest in this information is greater than any identifiable public interest, the FOIA requires that the information be withheld. Accordingly, the credit card number is redacted pursuant to Exemption (b)(6) of the FOIA.

The withholding under Exemption (b)(6) constitutes a partial denial of your request for records under the FOIA. You have the right to appeal this initial decision to the Deputy General Counsel, United States Patent and Trademark Office, P.O. Box 1450, Alexandria, VA 22313-1450. An appeal must be received within 30 calendar days from the date of this letter. See 37 C.F.R. § 102.10(a). The appeal must be in writing. You must include a copy of your original request, this letter, and a statement of the reasons why this initial determination is in error. Both the letter and the envelope must be clearly marked "Freedom of Information Appeal."

Sincerely,

Kathryn Siehndel

Kathryn Siehndel
USPTO FOIA Officer
Office of General Law

Enclosure



Display Credit Card Payment

Payment

| | | | |
|---|---|---|---|
| Payment Source: | [illegible] | Amount: | [illegible] |
| Status: | [illegible] | Unused Amount: | |
| Acquisition Date: | [illegible] | | |
| Created by Operator: | [illegible] | | |
| Sequence No.: | [illegible] | | |

Credit Card

| | | | |
|---|---|---|---|
| Account Number: | | Expiration Date: | 10/07 |
| Type: | [illegible] | | |
| Holder Name: | [illegible] | | |
| Zip Code: | [illegible] | | |

Telephone Order

| | | | |
|---|---|---|---|
| Taken By Name: | [illegible] | | |
| Authorization Date: | 07/05/2005 | Authorization Code: | 004213 |

OK



UNITED STATES PATENT AND TRADEMARK OFFICE

Commissioner for Patents
United States Patent and Trademark Office
P.O. Box 1450
Alexandria, VA 22313-1450
www.uspto.gov

Customer No 000000000

M12AA

DATE PRINTED
07/23/2013

ROBERT M DOWNEY PA
150 EAST PALMETTO PARK ROAD SUITE 350
BOCA RATON FL 33432

# MAINTENANCE FEE STATEMENT

According to the records of the U.S. Patent and Trademark Office (USPTO), the maintenance fee and any necessary surcharge have been timely paid for the patent listed below. The "PYMT DATE" column indicates the payment date (i.e., the date the payment was filed).

The payment shown below is subject to actual collection. If the payment is refused or charged back by a financial institution, the payment will be void and the maintenance fee and any necessary surcharge unpaid.

Direct any questions about this statement to: Mail Stop M Correspondence, Director of the USPTO, P.O. Box 1450, Alexandria, VA 22313-1450.

| PATENT NUMBER | FEE AMT | SUR CHARGE | PYMT DATE | U.S. APPLICATION NUMBER | PATENT ISSUE DATE | APPL. FILING DATE | PAYMENT YEAR | ENTITY STATUS | ATTY DKT NUMBER |
|---|---|---|---|---|---|---|---|---|---|
| 6,337,618 | $450.00 | $0.00 | 07/05/05 | 09/414,183 | 01/08/02 | 10/07/99 | 04 | SMALL | CASFPA199 |