IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO

CASE NO. 13-CV-1206 SMV-RHS

FILED
UNITED STATES DISTRICT COURT
DISTRICT OF NEW MEXICO

14 MAR 24  AM 9: 51

CLERK-ALBUQUERQUE

FRANK BLACKMOON, and
ZIOMARA IBARRA-BLACKMOON,

     Plaintiffs,

v.

ROBERT M. DOWNEY, P. A., and
ROBERT M. DOWNEY, an individual

     Defendants.

_____/

**PLAINTIFFS' RESPONSE TO DEFENDANTS' MOTION TO DISMISS PLAINTFFS'
COMPLAINT FOR LACK OF PERSONAL JURISDICTION AND IMPROPER
VENUE, OR TO TRANSFER VENUE TO THE SOUTHER DISTRICT OF FLORIDA
PURSUANT TO 28. U.S.C. §1404(a); AND DECLARATION OF FRANK
BLACKMOON, DECLARATION OF ZIOMARA IBARRA BLACKMOON, AND
<u>DECLARATION OF JAMES CRAIG IN SUPPORT THEREOF</u>**

    **COME NOW** Plaintiffs' Frank Blackmoon and Ziomara Ibarra-Blackmoon,

collectively ("Plaintiffs") to respond to Defendants' Motion to Dismiss Plaintiffs' claims

citing lack of personal jurisdiction pursuant to Fed. R. Civ. P. 12(b)(2); and citing

improper venue pursuant to Fed. R. Civ. P. 12(b)(3);  and, furthermore, to move this

Court, in the interest of justice, to deny Defendants' procedural motion(s) to dismiss;

and, in the alternative, in agreement with Defendants' alternative argument to move

this Court pursuant to 28 U.S.C. §1404(a) transfer Plaintiffs' cause of action to the

Southern District of Florida, and in support thereof state as follows:

## FACTS

### 1) Brief Case Overview.

The facts of this case are firmly rooted in the attorney-client relationship. The Plaintiffs are clients of Defendant Robert M. Downey, P.A., of Florida based intellectual property law firm. Robert M. Downey, President of Robert M Downey P.A., personally prepared and prosecuted a patent application that matured into U. S. Patent number 6,337,318, B1 ("lock patent"), on January 08, 2002. At such time, Plaintiffs purchased Defendants utility patent maintenance service. On January 17, 2002 in a letter to the Plaintiffs, Defendants acknowledged said service by express written agreement to Plaintiffs which in part states, "[T]he Patent and Trademark Office now requires that maintenance fees be paid at 3 ½, 7 ½, and 11 ½ years from the date of the patent grant in the order to keep the patent enforce. **We have docketed this matter for payment of the required fees and will notify you in advance of the deadline dates;** however, you should also docket this on your calendar to avoid any confusion." <u>See</u> Complaint Exhibit "D". The letter clearly states, Defendants promise to perform duties for the Plaintiffs as far off as 11 ½ years into the future. Defendants now allege "[W]hen the patent issued in 2002, i.e., the point at which the parties' relationship terminated" <u>See</u> Dec. Robert M. Downey. January 08 falls before January 17 so that statement is false.

The attorney-client relationship between the parties' that began in Florida never <u>formally</u> terminated. Defendants' allege repeatedly the attorney-client relationship is terminated but Defendants have not otherwise made a prima-facie showing that the attorney-client relationship is in fact terminated. In fact, when Plaintiffs informed

Defendants of their move to New Mexico Defendants informed Plaintiffs local representation was not needed because Defendants represented them with the Patent and Trademark Office (PTO). On or about February of 2013 Plaintiffs discovered their lock patent expired in 2010 for failure to pay the maintenance fees. Thus, Plaintiffs brought this action against Defendants for breach of contract and professional negligence.

### 2)  Defendants' Plea.

Defendants defense *counsel* chose <u>not</u> to file an Answer to the Complaint instead filed a motion to dismiss Plaintiffs' claims citing Fed. R. Civ. P. 12(b)(2) & 12(b)(3) for procedural defects; or alternatively transfer venue under 28 U.S.C. §1404(a).

### (a) Fed. R. Civ. P. 12(b)(2) lack of personal jurisdiction;

At the time this diversity action was filed *Walden v. Fiore* had not been decided by the Supreme Court of the United States. Apparently, district and appellate courts have reached different conclusions of law in regard to personal jurisdiction in diversity actions. In light of the decision in *Walden v. Fiore* decided February 25, 2014, litigating personal jurisdiction is needless. Plaintiffs are cognizant of the finite resources of the courts. In pursuit of justice Plaintiffs' except the additional burden of transfer and do not object to the transfer of their cause of action to the Southern District of Florida.

### (b) Fed. R. Civ. P. 12(b)(3) improper venue.

In accordance with paragraph (a) above, in pursuit of justice Plaintiffs' except the additional burden of transfer and do not object to the transfer of their cause of action to the Southern District of Florida.

### 3) **Plaintiffs' argument against procedural dismissal of claims.**

Plaintiff's factual allegations are to be taken as true for the purpose of the Court's ruling on the Motion to Dismiss because the motion is not to be substituted for the trial of genuine factual issues and reasonable inferences should be drawn in Plaintiff's favor.

Furthermore, because granting a motion to dismiss results in a determination on the merits at an early stage of a plaintiff's case, the district court "must take all the well pleaded allegations as true, construe the complaint in the light most favorable to the plaintiff, and determine whether, under any reasonable reading of the pleadings, the plaintiff may be entitled to relief." *Colburn v. Upper Darby Twp.*, 838 F.2d 663, 665-66 (3d Cir. 1988) (citations and internal quotations omitted).

Defendants dismissal arguments are procedural not substantive. A court should not dismiss a claim unless it appears to a certainty that no relief could be granted under any set of facts which could be proved. See *Hishon v. King & Spalding*, 467 U.S. 69, 73 (1984). Federal Rule of Civil Procedure 8(a)(2) provides that a complaint need only offer "a short and plain statement of the claim showing that the pleader is entitled to relief." This is a minimum notice pleading standard "which relies on liberal discovery rules and summary judgment motions to...dispose of unmeritorious claims." *Swierkiewicz v. Sorema*, 122 S.Ct. 992, 998 (2002). Claims lacking merit are more appropriately dealt with through summary judgment pursuant to Rule 56. See *Swierkiewicz*, 122 S.Ct. 998. Id

### 4) **Defendants' covert subterfuge.**

Defendants' argues for outright dismissal of Plaintiff's claims over procedural not substantive issues. Outright dismissal is not in the interest of justice. Further

discovery will reveal Defendants duplicity in a fraud against Plaintiffs'. Enter the sworn

declaration of Robert M. Downey. Defendants allege, the attorney-client relationship

terminated when the patent granted; or when the Plaintiffs' failed to pay Defendants

fees and expenses; or when the PTO 3 ½ year maintenance fees were paid.

The record is now awash with such allegations. Defense *counsel* muddles the

allegations into Defendants motion under its FACTS enough to bring forth a deadbeat

pretense. These fictitious debt claims, though not germane to a Defendants motion to

dismiss for procedural defects are now on the record for this Court to see and consider.

Moreover, Defendants manifest illusion, that the attorney-client relationship

terminated for failure to pay is Defendants chief pretense. "[A]ccording to Defendants'

records, these outstanding fees were never paid by Plaintiffs. Shortly thereafter,

Defendants sent Plaintiffs the letter attached as Exhibit D to the complaint (#001), again

asking for payment of past-due fees. The Plaintiffs never responded. On March 11, 2002

Defendants made yet another demand for payment." See Dec. Robert M. Downey,

paragraph 4 and Exhibit A. However, this anomaly purposefully placed on the record is

akin to a prosecutorial frame up and must be corrected here and now.

Defendants' certainly cannot make a prima-facie case showing the Plaintiffs

ignored Defendants demand for payment or failed to contact Defendants, as they allege,

in light of the April 01, 2002 payment to Defendants for the lock patent. See Plaintiffs'

Exhibit E attached hereto. Proof positive Plaintiffs received Robert M. Downey payment

of ONE THOUSAND ($1000.00) dollars USD in cash (U. S. postal money orders) after

the demand letter of March 11, 2002. The Defendants billing records are askew because

of all the cash Defendants pocketed. <u>See</u> Dec. Frank Blackmoon. Defendants allege, they are still owed over $4,000., for fees and expenses. <u>See</u> Dec. Robert M. Downey ¶ 4.

Further discovery is certainly warranted in this matter as it appears Defendant Robert M. Downey's declaration contains material misrepresentations, omissions and conceals material facts. <u>See</u> Dec. Frank Blackmoon, <u>See</u> Dec. Ziomara Ibarra-Blackmoon.

Defendants' unethical business tactics will become apparent as Plaintiffs' records become available to a court for review. <u>See</u> Dec. Frank Blackmoon, <u>See</u> Plaintiffs Exhibits, <u>See</u> Dec. James Craig.

5) <u>**Argument in support of transfer to the Southern District of Florida.**</u>

Plaintiffs' respectfully request this Court transfer venue of this action to the Southern District of Florida.

**TITLE 28 § 1404**

> **(a) For the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought or to any district or division to which all parties have consented.**

"For the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought or to any district or division to which all parties have consented." 28 U.S.C. § 1404(a). "Where an action might have been brought" includes only those districts where the plaintiff "had a right to bring the suit originally." *Morris by Rector v. Peterson,* 759 F.2d 809, 812 (10th Cir. 1985). Section 1404(a) "is intended to place

Case 9:14-cv-80537-KMM   Document 22   Entered on FLSD Docket 03/26/2014   Page 7 of 21

BLACKMOON v DOWNEY
CASE NO. 13CV1206 SMV-RHS

discretion in the district courts to adjudicate motions for transfer according to an individualized, case-by-case consideration of convenience and fairness." *Stewart Org., Inc. v. Ricoh Corp.*, 487 U.S. 22, 29 (1988).

Plaintiffs had the right to bring this suit in the Southern District of Florida.

In deciding a motion to transfer in the District of New Mexico, the Court is to weigh the following discretionary factors:

> **the plaintiff's choice of forum; the accessibility of witnesses and other sources of proof, including the availability of compulsory process to insure attendance of witnesses; the cost of making the necessary proof; questions as to the enforceability of a judgment if one is obtained; relative advantages and obstacles to a fair trial; difficulties that may arise from congested dockets; the possibility of the existence of questions arising in the area of conflict of laws; the advantage of having a local court determine questions of local law; and all other considerations of a practical nature that make a trial easy, expeditious and economical.**

*Chrysler Credit Corp. v. Country Chrysler, Inc.*, 928 F.2d 1509, 1516 (10th Cir. 1991). "[U]nless the balance is strongly in favor of the movant, the plaintiff's choice of forum should rarely be disturbed." *Scheidt v. Klein*, 956 F.2d 963, 965 (10th Cir. 1992). Ordinarily, a plaintiff's choice of forum should not be disturbed unless the balance of the remaining factors is strongly in favor of transfer. See *Scheidt*, 956 F.2d at 965. The party seeking transfer must prove the transfer is appropriate, and the balance of considerations tilts strongly in favor of transfer. *Scheidt*, 956 F.2d at 965.

As a preliminary matter, the proposed transferee district, the Southern District of Florida, must be a district or division where the action might have originally been brought in order to transfer this action there. See § 1404(a). The district is appropriate.

However, "[t]he convenience of witnesses is the most important factor in deciding a motion under § 1404(a)." *Emp'rs Mut. Cas. Co. v. Bartile Roofs, Inc.*, 618 F.3d 1153, 1169 (10th Cir. 2010) (citing *Cook v. Atchison, Topeka & Santa Fe Ry. Co.*, 816 F. Supp. 667, 669 (D. Kan. 1993) (citing *Buckley v. McGraw-Hill, Inc.*, 762 F. Supp. 430, 440 (D. N. H. 1991)). And this factor strongly supports trial in the Southern District of Florida.

To demonstrate inconvenience, the movant must (1) identify the witnesses and their locations; (2) indicate the quality or materiality of their testimony; and (3) show that any such witnesses were unwilling to come to trial, that deposition testimony would be unsatisfactory, or that the use of compulsory process would be necessary. Id.

Plaintiffs' co-inventor resides in Palm Beach County, Florida. The Defendants are located in Palm Beach County, Florida. Defendants' documentation pertaining to the case and financial statements are located in the Southern District of Florida. Thus, a trial in the Southern District of Florida would facilitate live testimony from the most relevant witnesses who are outside the subpoena power of this Court to compel attendance at trial. Furthermore, evidence which will prove or disprove Plaintiffs' existing claims and new claims lies in Florida.

Further, a venue change under § 1404(a) obligates the transferee court to apply the state law that would have applied in the transferor court. *Trierweiler v. Croxton & Trench Holding Corp.*, 90 F.3d 1523, 1535 (10th Cir. 1996) (citing *Van Dusen v. Barrack*, 376

U.S. 612, 639 (1964)). Federal judges routinely apply the law of a State other than the State in which they sit. *Atl. Marine Constr. Co. v. United States Dist. Court*, 134 S. Ct. 568, 584 (U.S. 2013).

Indeed, this present action reflects a classic case which ought to be transferred.

### RECITATION

In consideration of defense *Counsel* alternative argument, Plaintiffs' contacted Mr. Harris by facsimile, to ask, if, his clients' would stipulate to transfer this action to the Southern District of Florida as argued. At the time of this filing we do not have an answer. Based on his argument we believe the transfer is unopposed.

### CONCLUSION

For the foregoing reasons, deny Defendants motion to dismiss Plaintiffs' claims, under Fed. R. Civ. P. 12(b)(2) & 12(b)(3), in the alternative, under to 28 U.S.C. §1404(a), in the interest of justice, transfer this action to the Southern District of Florida.

FRANK BLACKMOON, and
ZIOMARA IBARRA-BLACKMOON
HC-61 Box 3011
Ramah, New Mexico, 87321
Telephone: (505) 903-9657
Facsimile: (505) 775-3042
email: frankblackmoon@aol.com

By:    FRANK BLACKMOON
       Plaintiffs' *Pro Se*

-9-

BLACKMOON v DOWNEY
CASE NO. 13CV1206 SMV-RHS

## CERTIFICATE OF SERVICE

**I HEREBY CERTIFY** that a true and correct copy of the foregoing has been furnished, by **U. S. Postal Mail** and **Facsimile** to Josh A. Harris, Esq., at Beall & Biehler, *Counsel* for Defendants, located at 6715 Academy Road N.E., Albuquerque, New Mexico 87109, this 24th day of March, 2014.

By:     FRANK BLACKMOON
        Plaintiffs' *Pro Se*

# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF NEW MEXICO

## CASE NO. <u>13CV1206 SMV-RHS</u>

FRANK BLACKMOON, and
ZIOMARA IBARRA-BLACKMOON,

      Plaintiffs,

v.

ROBERT M. DOWNEY, P. A., and
ROBERT M. DOWNEY, an individual

      Defendants.

_____/

## <u>DECLARATION OF FRANK BLACKMOON</u>

I, FRANK BLACKMOON, being of full age, hereby declare under penalty of perjury and to the best of my knowledge state as follows:

1. I am a Plaintiff in the above captioned case.

2. I am a citizen of the U. S. A. and a full time resident of the State of New Mexico.

3. I am a co-inventor listed on U.S. Patent No. 6,337,618 B1 ("lock patent").

4. I submit this declaration in support of Plaintiffs' claims.

5. I am a client of the Florida based Robert M. Downey, P.A. law firm.

6. I have read the declaration of our patent attorney Robert M. Downey the President of Robert M. Downey, P.A., that being said, I conclude Mr. Downey perjured himself through his declaration.

7. For the record; when my wife and I became clients' of Robert M. Downey, P.A., in 1999 we <u>initially</u> made our payments to Downey only by personal check(s).

8. For the record; the types of financial documents bullet pointed below are in my possession. Admissible in a court of law, proof that certainly show Mr. Downey received payments from us for the legal service's his <u>business</u> provided:

- personal checks; endorsed **FOR DEPOSIT ONLY**
- personal checks; Mr. Downey personally **CASHED**
- US postal money orders (cash equivalent) Mr. Downey **CASHED**; and
- I allege; he received **CASH** money as payment on account.

9. Based on Mr. Downey's statement in his declaration in support of Defendants motion at paragraph (4) where Downey alleges as of March 11th 2002, that I, my wife Ziomara, and Mr. Craig failed to pay him $4,194.95, I decided to take it upon myself, to make a complete review of all of our documents and payments made to Downey from the beginning of our attorney-client relationship.

10. That being said, I completed my review of our records and have conclusive proof Downey's statement is not truthful. This statement by Downey is just one more of his misguided tactics, in his failed attempt to offset his liability as our attorney. Mr. Downey, a lawyer, has some answering to do.

11. I reviewed Downey's billings and each of our payments. I concluded Downey was paid in full. Moreover, when I looked more closely at all our canceled checks written to pay Downey's billings, the memo shows the CASFPA199,

which indicates the lock patent. The cancelled checks themselves indicate the funds were requested and paid to the bearer of the check.

12. However, in addition to me verifying payment, under closer scrutiny I noted the information on the back of the canceled checks revealed something more unseemly, I noticed a definite pattern as to how payment was requested at the bank. It became clear to me, our checks made payable to Mr. Robert Downey were not always properly endorsed by his business (as shown below) but, were in fact, actually signed by Robert Downey himself or others and submitted to a bank teller for payment in cash money beginning as early as 1999.

**PAY TO THE ORDER OF
SUNTRUST BANK, MIAMI
FOR DEPOSIT ONLY
ROBERT M. DOWNEY, P.A.
0189001159635**

13. Moreover, we submit, if, our check(s) made payable to Mr. Robert Downey equaled or exceeded One Thousand ($1000.00) dollars the check was deposited into his business account as shown in Exhibit A, however, if the check(s) made payable to Mr. Robert Downey amounted to less than One Thousand ($1000.00) dollars as shown in Exhibit B, the check was cashed for money. We noticed this trend continue unabated over many years. Copies of two such canceled checks are attached hereto as Exhibit "A" (≥ $1000.) and Exhibit "B" (<$1000.)

14. As our attorney-client relationship evolved with Mr. Downey, we also partnered with Mr. Craig, a person Mr. Downey recommended, a person we believed worked with or for Downey making patent drawings.

- 3 -

15.   Once we partnered with Mr. Craig, Mr. Downey seemed to treat me and my wife in a friendlier more relaxed manner, or, it may have just seemed that way. Anyway, at some point Mr. Downey started to offer me the opportunity to pay a little less money when I'd pay in cash. So I did.

16.   I began paying Downey with some cash but I also paid him with United States Postal Money Orders. Recently I paid a fee to the U. S. Postal Service to track said money orders that I mailed to Mr. Downey to confirm the money orders were timely cashed by the recipient. I received affirmative confirmation.

17.   For the record; I have in my possession the original receipts showing the date, time, and Post Office branch, the amount of the U. S. Postal Money Orders and my method of payment. _See_ Exhibit "C" attached hereto.

18.   For the record; I am also in possession of all of the original detached stubs of the United States Postal Money Orders. _See_ Exhibit "D" attached hereto.

19.   For the record; I have in my possession photocopies of the original U. S. Postal Money Orders addressed to Mr. Downey at his 2002 office located at 150 East Palmetto Park Road, Suite 350, Boca Raton, Florida. Copies of two of the U. S. Postal Money Orders are attached hereto as both Exhibit "E" ($500.), and, Exhibit "F" ($500.)

20.   The U. S. Post Office receipt attached hereto as Exhibit "C" shows the purchase date; is after Downey's invoice of March 11, 2002, and includes the following:

   - Location of purchase: **Sunset Branch - Miami, Florida**

   - Date of purchase: **April 01, 2002**

- 4 -

- Time of purchase: **10:06:37 AM**

- Total purchase amount: **$1,005.30**

- Description #1: **$500. Domestic Money Order**

- Description #2: **$500. Domestic Money Order**

- Description #3: **$3.50. Stamp**

- Paid by: **Cash**

21.   As for Mr. Downey's sworn statement, _See_ Declaration of Robert M. Downey at

Paragraph (4) that states as follow:

> **[A]t the time of issuance of the patent, the Plaintiffs and James J. Craig had accrued approximately $4,200.00 for legal fees and expenses, which had not been paid, despite my written demand for payment. _See_ Exhibit A. Contrary to the allegations in paragraphs 58 and 65 of Plaintiff's Complaint, I was not timely paid for my legal fees and expenses. _See_ Exhibit A. To the best of my knowledge, this past due balance of approximately $4,200.00 owed by Plaintiff's and James J. Craig has still not been paid.**

Mr. Downey is not believable. This statement cited directly above is obviously false and misleading, when looking at just this one lone example. My receipt, the money order stubs, and the copies of the original U. S. Postal Money Orders themselves, tell a whole different story than that of Mr. Downey. There is no doubt I made this purchase. I have the original receipt. The purchase date on

the receipt clearly shows **April 01, 2002** which falls <u>after</u> March 11, 2002 and the

U. S. Postal Money Orders were correctly addressed and redeemed.

22.   On or about April 01, 2002, I intended pay Downey the One Thousand dollars

($1000.00) in cash, but, I could not drive to Boca Raton, so I made that purchase

to mail the cash payment to Downey's office. My receipt shows the Post Office

branch was just down the street from my residence in 2002. The receipt even

shows I purchased stamps too. After, I made the purchase I went home, filed

out the money orders, copied them, and then mailed the payment to Downey.

My copies of these money orders show Mr. Downey's correct business address

in 2002. Records show those money orders were cashed by an individual

identifying himself as Robert M. Downey.

23.   The fact is Mr. Downey's declaration statement above certainly <u>cannot</u> be true!

24.   Based on Mr. Downey's sworn statements, he would have this Court believe

that neither my $1000.00 payment shown here nor any other payments made

by me after March 11, 2002 were received by Defendants. Such a scenario is just

too unbelievable based on my evidence. To that end, I submit, when you

include what my check cashing evidence shows about Mr. Downey's unethical

business practices, it is way more likely than not, that Robert M. Downey,

President of Robert M. Downey, P.A., cashed the money orders and pocketed

the cash instead of depositing the payment into Robert M. Downey, P.A.'s

business account, resulting in the corruption of his business's bookkeeping.

25. I do recall, on a one occasion I did ask Mr. Downey why my bill did not reflect some of my payments. His response was, "don't worry" it was only a clerical error by my secretary. After that I never again gave it much thought.

26. With respect to the same paragraph referenced above, where the Defendants allege in part the attorney-client relationship was terminated;

> **[W]hen the patent issued in 2002, i.e., the point at which the parties' relationship terminated,**

This statement is most certainly contrived in lieu of litigation. How so? Because looking at Defendants declaration (<u>*See*</u> Exhibit B), Downey is doing business with his clients as usual, the letter's language, content, and demeanor of the author are unremarkable. No angst, no mention of a past balance due and owing. This letter is certainly representative of an attorney-client relationship which is operationally intact.

27. I submit; when the lock patent granted the attorney-client relation <u>did not</u> terminate as Downey alleges, but continues even as I attest to this declaration. Neither my co-inventors nor I terminated the attorney-client relationship with Mr. Downey or his business Robert M. Downey, P.A.

28. I hereby, submit Exhibit "G" into evidence as proof contrary to Mr. Downey's statement cited in ¶ No. 26. Exhibit "G" shows a letter from Mr. Downey dated September 19, 2002 sent to co-inventor Mr. Craig, Ziomara, and myself. The letter shows Downey <u>did</u> in fact; act as our attorney, when we paid him to construct his written legal opinion, on the possible infringement of our patent

by a new product, trademarked at such time by the name of LAZER LOCK.

Downey ultimately billed <u>his clients</u> for the legal opinion he provided. There is

no denial plausible here. Enough said. <u>*See*</u> Exhibit "G" attached hereto.

29.   I further submit Downey made no mention of any balance due and owning his

law firm on said lock patent when Downey sent me his invoice to pay for the

infringement opinion.

30.   I submit the final statement of the **September 19, 2002** letter is a true reflection

of Downey's demeanor at such time. First, there is no mention of a debt owed

whatsoever by these Plaintiffs' or Mr. Craig in this letter. Second, there is no

doubt Downey appears to be more than glad to provide his legal opinion and

services to <u>his clients</u>, clients which are apparently in good financial standing

with Mr. Downey's law firm.

> **[I] will be glad to address any questions that you may have**
>
> **regarding this matter, and I will discuss these issues in**
>
> **more detail when we meet this week.**
>
> **Kindest regards,**
>
> **Very truly yours,**
>
> **ROBERT M. DOWNEY, P.A.**

31.   I know Downey's declaration in support of his motion to dismiss or transfer is

awash with lies and misrepresentations. It is absolutely incredulous, that he

could actually expect any reasonably intelligent person to believe he was

sincere and his motivation true in his statement under FACTS at the first

unnumbered paragraph which begins as follows:

> **[I]n February 2005, as a <u>courtesy</u>, Defendants' sent**
> **Plaintiffs' notice that the 3.5 year maintenance fees were**
> **coming due on July 8 of that year.**

A <u>courtesy</u> not very likely; Downey billed me incessantly for anything and

everything imaginable.

32.   I submit; if money was owed him, as he now claims, knowing Mr. Downey as

      only a client could, no such gesture would have been forthcoming. Downey

      needs to somehow couch sending the letter of February 2005 as gesture on his

      part, a courtesy because the act of sending such a letter flies in the face of his

      debtor claim. And, any such act on his part sends a loud and clear message that

      the attorney-client relationship was intact and must be countered.

33.   I know the document Downey's declaration at paragraph (8) references is a

      fraud (<u>See</u> Declaration of Robert M. Downey Exhibit C). I have never seen this

      document before. The document dated July 19, 2005 is not authentic.

34.   I submit; these Defendants, as lawyers, are aware if they cannot show, which

      they cannot, that the attorney-client relationship was at some point terminated

      prior to the lock patent's 7 ½ maintenance fee notice they will be found in

      breach of contract, negligent and responsible for the damages Plaintiffs' suffer.

      So these Defendants, had to fabricate and introduce a wily subterfuge, a ruse,

      into the record. The letter of July 19, 2002 is one such ruse, offered up as

Downey's means to an end, the coup de grâce, Defendants deathblow to Plaintiffs' claims. Defendants motion at the second unnumbered paragraph Defendants write:

> **[D]efendants sent another letter to Plaintiffs dated July 19, 2005, to the forwarding address, again confirming the termination of the relationship,**

I contend Downey's introduction of this contrived document, he introduced into the record as evidence in support of his sworn statements is outright fraud, (_See_ Declaration of Robert M. Downey Exhibit C).

35. Defendants uncertified faked representation of a final termination between Plaintiffs and Defendants raises numerous valid and poignant questions, why, would Defendants fail to send it certified, why, would Defendants fail to remove themselves as the attorney-of-record with the United States Patent and Trademark Office (USPTO) on or about July 19th 2005, if in fact, Defendants did actually send such a letter, which they did not, why, did Mr. James Craig fail to receive such a letter, Craig's address has not change in all the time we have known him and remains the same to this day, that being said, I submit the document is a fake.

36. Surely, the standard protocol taught in every law-school dictates the proper method of terminating the attorney-client relationship in and outside a court of law. Downey is a practicing lawyer in Florida. Downey knows or should have known clients must be timely noticed. Termination Notice's in all facets of

business must be acknowledged and recorded. In this instance, Notice must be timely sent to the effected client, by US Postal Mail Certified Return Receipt Requested and Notice must be given to the United States Patent & Trademark Office (USPTO). Downey offers no such proof he did either.

37.  I submit; the document of July 19th 2005 cannot be authenticated.

38.  I submit: the sum and substance of said faked document is so acutely crafted and tailored to fit this matter the document reeks of fraud.

39.  I demand irrefutable proof, from Downey showing Ziomara and I, and Craig owe Downey $4,194.95. Because, outside his invoice, the evidence points to Downey lying about the debt.

40.  Just because Mr. Downey says it's so, doesn't make it so.

Pursuant to 28 U.S.C. §1746, I hereby declare under penalty of perjury that the forgoing statements made by me are true and correct to the best of my knowledge.

_____
Frank Blackmoon

State of New Mexico
County of Cibola

The foregoing instrument was acknowledged before me this 17 day of March, 2014 by Frank Blackmoon [X] who is personally known to me.

**Notary Seal**

_____
Notary Public
Commission Stamp/Seal:
May 28, 2015

- 11 -