# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW MEXICO

### CASE NO. 13CV1206 SMV-RHS

FRANK BLACKMOON, and
ZIOMARA IBARRA-BLACKMOON,

     Plaintiffs,

v.

ROBERT M. DOWNEY, P. A., and
ROBERT M. DOWNEY, an individual

     Defendants.

_____/

## DECLARATION OF ZIOMARA IBARRA-BLACKMOON

I, ZIOMARA IBARRA-BLACKMOON, being of full age, hereby declare under penalty of perjury and to the best of my knowledge state as follows:

1.  I am a Plaintiff in the above captioned case.

2.  I am a citizen of the U. S. A. and a full time resident of the State of New Mexico.

3.  I am a co-inventor listed on U.S. Patent No. 6,337,618 B1 ("lock patent").

4.  I submit this declaration in support of Plaintiffs' claims.

5.  I am a client of the Florida based Robert M. Downey, P.A. law firm.

6.  I have read the declaration of our patent attorney Robert M. Downey the President of Robert M. Downey, P.A., that being said, I conclude Mr. Downey perjured himself through his declaration.

7.  I perform the financial book-keeping for our household and our business.

- 1 -

8. I took it upon myself to save and store the lock patent documents including, invoices, receipts, canceled checks, money orders and copies of the like.

9. Frank and I found the project to be both complicated and very expensive.

10. We discussed the risks and expense with Mr. Downey. At the time we trusted him completely and paid him a lot of money.

11. Downey introduced us to Mr. James Craig.

12. As we got to know Mr. Craig, I noticed that he never pressured us for money. Mr. Craig seemed to like our idea and wanted to help us succeed with the invention, so, we decided to partner with him.

13. As we got to know more about dealing with Mr. Downey, I noticed all he wanted us to do was invest more and more money for his services, but, I became concerned as the project went on and on for years.

14. What always concerned me about Mr. Downey was he routinely suggested to Frank that we pay in cash to receive a discount.

15. When Mr. Downey also offered us a good size discount to settle our account in cash when the patent was completed Frank agreed.

16. We paid Mr. Downey a lot of cash thousands and thousands of dollars.

17. At that time, I was very concerned that paying Mr. Downey so much cash would hurt our tax return.

18. We always pay our taxes. We respect our rights here in the USA. I did not like the idea of paying Mr. Downey in cash so I suggested Frank pay with a cash equivalent, like US Postal money orders.

19. I know the document Downey references at paragraph (8) in his declaration is a fraud (*See* Declaration of Robert M. Downey Exhibit C). I have never seen this document before. The document dated July 19, 2005 is not authentic.

20. I asked our son, who, is working toward his legal degree to advise us how to combat such blatant lies, his response; demand to see irrefutable proof.

21. I demand irrefutable proof, from Downey showing Frank and I, and Mr. Craig owe Downey the $4,194.95 he now claims.

22. I am so disappointed by what I've read, we trusted Mr. Downey with our investment. I feel so betrayed.

Pursuant to 28 U.S.C. §1746, I hereby declare under penalty of perjury that the forgoing statements made by me are true and correct to the best of my knowledge.

_Ziomara Ibarra Blackmoon_

_____
Ziomara Ibarra-Blackmoon


State of New Mexico
County of Cibola

The foregoing instrument was acknowledged before me this __17__ day of March, 2014 by Ziomara Ibarra-Blackmoon [X] who is personally known to me.

**Notary Seal**

_Bob Clements_

_____
Notary Public
Commission Stamp/Seal:
May 28, 2015

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO

CASE NO. 13CV1206 SMV-RHS

FRANK BLACKMOON, and
ZIOMARA IBARRA-BLACKMOON,

      Plaintiffs,

v.

ROBERT M. DOWNEY, P. A., and
ROBERT M. DOWNEY, an individual

      Defendants.

_____/

## DECLARATION OF JAMES CRAIG

I, JAMES CRAIG, being of full age, hereby declare under penalty of perjury and to the best of my knowledge state as follows:

1. I am not a party in interest in the above-captioned cause of action.

2. I am a citizen of the U. S. A. and a full time resident of the State of Florida.

3. I am a co-inventor listed on U.S. Patent No. 6,337,618 B1 ("lock patent").

4. I sold all my rights to said patent to the Plaintiffs in 2008.

5. I submit this declaration to categorically refute and deny any and all claims made against me by Robert M. Downey or Robert M. Downey, P.A., within his declaration in this action and I am prepared to testify as such in open court.

6. I also submit this declaration in support of Plaintiffs' claims.

7.  I read the entire declaration of Robert M. Downey and know for a fact many of his statements to be deceitful, manipulative and purposefully misleading.

8.  I personally paid Downey to prepare and prosecute two U.S. utility patents for me, a quick-release leash for big wave surfing (1995) and a date-rape drug detection device with carrying kit (2000) either by check, work product or cash, or in some instances a combination of such means.

9.  I also paid Downey my share of the cost to prepare and prosecute the electro-mechanical lock patent (2002) either by check, work product or cash, or in some instances a combination of such means.

10. Contrary to Downey's declaration at paragraph (4) I, **DO NOT** owe Downey or his firm any valuable consideration of any kind, whatsoever, for services he or his firm rendered to me.

11. Contrary to Downey's declaration at paragraph (4) upon my inspection of Frank and Ziomara copies of their cancelled personal checks and the copies of those U. S. Postal Money Orders that were paid to Downey for the lock patent, I also have to consider my knowledge that Robert M. Downey takes cash payments. So I conclude, based on my inspection and certain knowledge, that the Blackmoon's, like myself, **DO NOT** owe Robert M. Downey's law firm any valuable consideration of any kind, whatsoever, for services he or his firm rendered to them or me with respect to the lock patent.

12. Downey's declaration at paragraph (5) reads like doublespeak to me. Because, I clearly recall Mr. Downey suggesting, that since there are three of us; Frank

- 2 -

and Ziomara and I; as a partnership, we should hire Downey, P.A., so there is

no confusion who or how to handle the future maintenance fees. Sounded like

a good plan to me at the time, so we bought the maintenance service.

13.  Downey's declaration at paragraphs (6 & 7) is false. I certainly <u>did</u> receive by

US postal mail at my residence, Downey's notice regarding the 3 ½ year

maintenance fees due on the lock patent. I did telephone Frank and Ziomara to

discuss payment. I did pay the fee and they reimbursed me. I did speak with

Bob about payment. To expedite payment Bob guided me through the process

and we used my bank card to make payment. And, I did compensate Bob for

his time and effort with cash money.

14.  Downey's declaration at paragraph (8) I believe the Exhibit C document is a

sham pleading; a mock-up drafted in 2013. The document dated July 19, 2005 is

not genuine. (<u>See</u> Declaration of Robert M. Downey Exhibit C). I have never

seen this document before. Without a properly dated certified U. S. Postal Mail

Return Receipt Request with my <u>authentic</u> <u>signature</u> and nothing less, I will

never believe otherwise. In addition, Downey's claim that he <u>eventually</u>

discovered my bank card was used to pay the 3 ½ year maintenance fee is

absolutely ridiculous.

15.  The following paragraphs below numbered (15-30) are with respect to

Downey's declaration at paragraph (9) I believe Frank and Ziomara when they

say they informed Downey every time they moved. Frank never failed to

inform me. It's very unlikely Frank and Ziomara would fail to notify the law firm watching over their investment.

16. With respect to the meeting of June 10th 2013; after that letter arrived from the buyer in China and the Blackmoon's discovered the lock patent was expired the Blackmoon's began to express to me their frustration with Downey and, yes, they certainly blamed Downey. And, I believe rightly so.

17. I was curious why Bob dropped the ball on this one, so I, offered to contact Bob to get his side of the story and Frank and Ziomara accepted my offer.

18. I truly believed my contacting Bob would allow <u>both</u> parties to communicate and discuss this unfortunate issue hoping my involvement would bring about some sort of an amicable solution and nothing more.

19. So, I made an appointment to meet with Bob on June 10th 2013. When I arrived we spoke cordially before the meeting began, then I asked Bob if I could conference in Frank. Downey agreed.

20. When Frank answered I immediately brought to Bob's attention the fact that the lock patent expired for failure to pay the 7 ½ year maintenance fees and informed Downey that, that issue was the reason for this meeting.

21. I told Downey Frank and Ziomara wanted to know the reason why their 7 ½ year maintenance fee notice for the lock patent never arrived in 2009, Bob quickly answered, "we don't do that anymore."

22. Surprised with Bob's nonchalant answer, I asked him why he did not at least send a certified letter warning Frank. Bob shrugged his shoulders and made no reply treating the news as if it were no big deal.

23. I then informed Downey that Masterlock was now building the lock shown and described in the "lock patent." Bob's first physical reaction was to act like a deer in headlights. Downey excused himself from the meeting and bolted from the room only to return after a considerable amount of time with two envelopes. Bob claimed that the notice was sent and that the two envelopes in hand were returned to him because of Frank's change of address.

24. When Frank heard Downey imply the two letters returned to him, caused the problem Frank immediately spoke up and said and I am quoting, "Mr. Downey you have my address here in New Mexico, all my phone numbers, my email address, I want to know why you didn't contact me?" end quote.

25. At such time, I was inspecting the post mark and addresses on both envelopes and asked Frank to hold on and hear me out, I then told Frank that the envelopes were from 2005 and reminded Bob that I received these same letters for the 3 ½ year notice and that the 2005 fees were paid in full and that the notice at issue now was the 7 ½ year notice due in 2009.

26. With the returned letter issue settled Downey told us he would have to look into the matter further and agreed to contact Frank within two weeks. At that point Frank agreed to wait the two weeks for an answer and disconnected.

27. The meeting ended and as I left his office I commented to Bob that in my "opinion" Frank and his wife were rightfully very upset; upset enough to sue him for the loss of their investment. And added, "I hope you're insured."

28. Weeks passed and at some point Frank telephoned me and told me Downey did not follow through on his promise to contact him.

29. For the record, Downey made no mention of an outstanding balance due and owing for the lock patent during that meeting nor did Downey produce that phantom letter now identified as Exhibit C, even though Bob had ample time and full access to his files.

30. I have resided at my current residence for over 20 years. My residence is situated within about a mile of Bob Downey's residence. As such we are not actual neighbors. Although, Bob was to my home on one occasion, and, I have seen and spoken with him at the Publix food market from time to time, but, not once has he ever claimed I or the Blackmoon's owed him money for an outstanding balance on that lock patent.

31. With respect to Downey's declaration at paragraph (10) I never asked who wrote it. Frank brought the agreement with him to my residence on or about January 17th 2008 and I agreed to sign it.

32. With respect to Downey's declaration at paragraph (11-24) I have no knowledge with respect to all the allegations set forth in these paragraphs except to state, as Frank left my residence on or about January 17th 2008, Frank told me, he was on his way to see Downey.

- 6 -

BLACKMOON v DOWNEY
CASE NO. 13CV1206 SMV-RHS

33.    In conclusion, I personally believe Downey's declaration is a dishonest attempt

to portray <u>all</u> his clients in such an unfavorable light, as debtors to him, too

avoid responsibility for his own negligence.

Pursuant to 28 U.S.C. §1746, I hereby declare under penalty of perjury that the

forgoing statements made by me are true and correct to the best of my knowledge.



_____
James Craig

State of Florida
County of Palm Beach

The foregoing instrument was acknowledged before me this _17_ day of March, 2014 by
James Craig [X] who is personally known to me.

KATHLEEN F. LAIDLAW
MY COMMISSION #FF078887
EXPIRES April 8, 2018
(407) 398-0153    FloridaNotaryService.com

Kathleen F. Laidlaw

_____
Notary Public
Commission Stamp/Seal:

**Notary Seal**

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO

CASE NO. 13-CV-1206 SMV-RHS

FRANK BLACKMOON, and
ZIOMARA IBARRA-BLACKMOON,

     Plaintiffs,

v.

ROBERT M. DOWNEY, P. A., and
ROBERT M. DOWNEY, an individual

     Defendants.

_____/

**PLAINTIFFS' RESPONSE TO DEFENDANTS' MOTION TO DISMISS PLAINTFFS'
COMPLAINT FOR LACK OF PERSONAL JURISDICTION AND IMPROPER
VENUE, OR TO TRANSFER VENUE TO THE SOUTHER DISTRICT OF FLORIDA
PURSUANT TO 28. U.S.C. §1404(a); AND DECLARATION OF FRANK
BLACKMOON, DECLARATION OF ZIOMARA IBARRA BLACKMOON, AND
<u>DECLARATION OF JAMES CRAIG IN SUPPORT THEREOF</u>**

**<u>PLAINTIFFS' EXHIBITS A – F</u>**

# PLAINTIFFS' EXHIBIT LIST

## 1. EXHIBIT A

Plaintiffs' copy (2) 1999 personal checks (≥1000.) FOR DEPOSIT ONLY

## 2. EXHIBIT B

Plaintiffs' copy of (2) 1999 personal checks (<1000.) CASHED

## 3. EXHIBIT C

Plaintiffs' copy (enlarged digital image) of 2002 U. S. Post Office Receipt

## 4. EXHIBIT D

Plaintiffs' copy (digital image) of 2002 U. S. Postal Money Order Stubs

## 5. EXHIBIT E

Plaintiffs' copy of 2002-04-01 U. S. Postal Money Order * Value $500.
To: Robert M. Downey 150 East Palmetto Park Road, Boca Raton, Florida

Plaintiffs' copy of 2002-04-01 U. S. Postal Money Order * Value $500.
To: Robert M. Downey 150 East Palmetto Park Road, Boca Raton, Florida

## 6. EXHIBIT F

Plaintiffs' copy of letter from: Robert M. Downey * Date: September 19. 2002

BLACKMOON v DOWNEY, et al.
CASE NO. 13-CV-1206

# EXHIBIT <u>A</u>

**FRANCISCO CASTELLANOS**
**OR LAZARA H. CASTELLANOS**
3030 NW. 97TH AVE.
MIAMI, FL 33147

63-1050/670
1185001442

116

DATE _9/14/99_

PAY TO THE
ORDER OF _Robert M. Downey_ $ _1633 75/100_

_One Thousand six hundred thirty five —100_ DOLLARS

**COMMERCEBANK**
NATIONAL ASSOCIATION
11645 Biscayne Blvd.
Miami, Florida 33181

MEMO _CASF D199_

_Francisco Castellanos_

⑆0670 10509⑆ 118500 1442⑈06 0116 0000 163375⑈

PAY TO THE ORDER OF
SUNTRUST BANK, MIAMI
FOR DEPOSIT ONLY
ROBERT M. DOWNEY P.A.
018900 1159635

066000109
020100346
020100346 06-11-99

JE 99 10

0080
0604
SUNTRUST BANK
8750 NW 21 TERR
MIAMI, FL
0090
00604

PAY TO THE ORDER OF
SUNTRUST BANK, MIAMI
FOR DEPOSIT ONLY
ROBERT M. DOWNEY P.A.
018900115963S

---

FRANCISCO CASTELLANOS
OR LAZARA H. CASTELLANOS
3030 N.W. 97TH AVE.
MIAMI, FL  33147

63-1050/670
1185001442

152

DATE 6/8/99

PAY TO THE
ORDER OF _Robert M. Downey_ 609  01  06  $1,000 00/00

_One Thousand dollar 00/100_  DOLLARS

CommerceBank
NATIONAL ASSOCIATION
11645 Biscayne Blvd.
Miami, Florida 33181

MEMO _____

⑈067010509⑈ ⑆1185001442⑈06 0152 ⑈0000100000⑈

# EXHIBIT B

066000109
040184126
040184126  10-25-99

SUNTRUST CEN.FL 10/22/99
2290 PREMIER ROW ORL.FL
STSC-MIA  *06310215Z4*

42654851

FRANCISCO CASTELLANOS
OR LAZARA H. CASTELLANOS
3080 N.W. 97TH AVE.
MIAMI, FL  33147

63-1050/670
1185001442

178

DATE 10/18/99

PAY TO THE
ORDER OF   Robert M. Downey                    $ 500 00/100

five hundred 00/100                            DOLLARS

COMMERCEBANK
NATIONAL ASSOCIATION
11645 Biscayne Blvd.
Miami, Florida 33181

040184126  0473  0485  01  10-25-99

MEMO  A3 FPA 199                11            Francisco Castellanos

:067010509:  118500144 2:06  0178   :00000500000:

066000109
050122824
050122824 12-01-99
SUNTRUST CEN FL 11/30/99
2296 PREMIER ROW ORL. FL
STSC-RTK =06316215Z=

42047743

Robert Downey

FRANCISCO CASTELLANOS
OR LAZARA H. CASTELLANOS
3030 NW. 97TH AVE.
MIAMI, FL  33147

63-1050/670
1185001442

193

DATE  11/25/99

PAY TO THE
ORDER OF  Robert Downey                      $ 840 00/100

eight hundred forty 00/100

COMMERCEBANK
NATIONAL ASSOCIATION
11645 Biscayne Blvd.
Miami, Florida 33181

MEMO  CASFFA199

⑆067010509⑆ 1185001442⑈06 0193 ⑆0000084000⑈

BLACKMOON v DOWNEY, et al.
CASE NO. 13-CV-1206

# EXHIBIT C

SUNSET BRANCH
MIAMI, Florida
331039998
(800)275-8777

04/01/2002                                    10:06:37 AM

------ Sales Receipt ------

| Product Description | Sale Qty | Unit Price | Final Price |
|---|---|---|---|
| Dom. Money Order 03825030320 | | | $500.00 |
| Domestic Money Order Fee | | | $0.90 |
| Subtotal: | | | $500.90 |
| Dom. Money Order 03825030330 | | | $500.00 |
| Domestic Money Order Fee | | | $0.90 |
| Subtotal: | | | $500.90 |
| $3.50 Stamp | 1 | $3.50 | $3.50 |

Total:                                        $1,005.30

Paid by:
Cash                                          $1,020.35
Change Due:                                     -$15.05

NetPost Mailing Online lets you send
your mailings right from your computer!
It's quick, easy and online at
www.usps.com.
Bill#: 1000501071251
Clerk: 11

Refunds only per DMM P014

BLACKMOON v DOWNEY, et al.
CASE NO. 13-CV-1206

# EXHIBIT <u>D</u>





BLACKMOON v DOWNEY, et al.
CASE NO. 13-CV-1206

# EXHIBIT <u>E</u>



# EXHIBIT F

## ROBERT M. DOWNEY, P.A.

150 EAST PALMETTO PARK ROAD
SUITE 350
BOCA RATON, FLORIDA 33432-4832
(561) 417-4771
FACSIMILE (561) 417-0198

ROBERT M. DOWNEY
REG. PATENT ATTORNEY
FLORIDA BAR
ANGELA M. MALLOY
FLORIDA BAR

PATENT AND TRADEMARK
MATTERS

September 19, 2002

James Craig
785 Harbour Drive
Boca Raton, FL 33431

Francisco & Ziomara Castellanos
8201 S.W. 107th Avenue, Unit B
Miami, FL 33173

RE:   U.S. Patent No. 6,337,618 B1 -
Infringement Opinion
Our Ref: CRAJG102

Dear Jim, Frank & Ziomara:

This follows your request for an infringement opinion. Specifically, you have requested me to review and analyze the product being marketed under the trademark LASER LOCK from Kidpower, Inc. of Brentwood, Tennessee, to determine whether this product infringes your U.S. Patent No. 6,337,618 B1 entitled Programmable Electromechanical Lock with Digital Display.

The determination of infringement requires a literal application of the claim language in the patent to the structure of the potentially infringing device. As you know, the claims in the patent set forth the metes and bounds of your patent rights. In other words, the claims legally define what your patent covers. The claims are expressed as a combination of elements, often referred to as "limitations" which, when considered as a whole, patentably distinguish your invention from the prior art.

The claims in the patent may be independent claims or dependent claims. As a general rule, independent claims provide the broadest definition of your patent rights. The dependent claims include all of the "limitations" of the independent claims from which they depend, and usually set forth more detailed definitions of the claimed elements or additional elements to be combined with the broader combination recited in the independent claim. In your patent, claims 1, 16 and 21 are independent claims and provide the broadest definition of your patent rights. Claims 1 and 16 are the broadest of all your claims.

To establish literal patent infringement, the alleged infringing product must include all of the limitations of at least one claim in the patent. This means that every element (i.e. component or functional part) contained in the claim must be found in the infringing product. The elements (components, parts, etc.) can be identical or equivalent to the claimed structure. Recent case law has restricted the interpretation of equivalent structure. For the most part, an interpretation of the scope of the claims is gleaned by reference to the drawings, detailed description and prosecution history. The courts look to the drawings and detailed description, as well as the

prosecution history, to determine what the inventor(s) intended to be the invention. This often has a narrowing effect on the interpreted scope of the claims

In determining whether the LASER LOCK product infringes your Patent No. 6,337,618 B1, I have compared the structure of the LASER LOCK product to the reading of your broadest claims, namely independent claims 1, 16 and 21. For your reference and convenience, I have highlighted the language in these claims.

The language which is identical, or nearly identical, to the structure of the LASER LOCK product is highlighted in green. To establish literal infringement, at least one claim would have to be highlighted entirely green, meaning that all of the limitations in the claim are found in the infringing product. In this case, a good deal of the recited structure in your claims is found in the LASER LOCK product. However, there are recited limitations in your claims which are not found in the LASER LOCK product.

The language in your claims 1, 16 and 21 which I have highlighted in blue is not found to be identical to the structure in the LASER LOCK product. For example, the LASER LOCK does not have the same "button means" for entering the combination. Nonetheless, there is structure in the LASER LOCK product which might be considered to be an equivalent to these claimed elements (as highlighted in blue) under the doctrine of equivalents in the patent law. As explained above, the court would look to the drawings and detailed description, as well as the prosecution history, to determine whether the structure of the LASER LOCK is "equivalent" to the recited elements in your claims, as highlighted in blue.

The language which I have underlined in red in claims 1, 16 and 21 defines structure that is not found, either identically or as an equivalent, in the LASER LOCK product. Specifically, the LASER LOCK product does not include a display for displaying the combination code or messages. Additionally, the LASER LOCK product does not include a locking lever that is "pivotally" movable "about an axis." Further, the LASER LOCK product does not include a locking lever having a "catch member." Finally, the LASER LOCK product does not include the wireless communication means for remotely programming and manipulating stored data in the memory means, as recited in your claim 21.

In view of the fact that the broadest claims in your patent recite structural limitations that are not found in the LASER LOCK product, it is my opinion that the LASER LOCK product does not literally infringe your patent.

In order to establish patent infringement, it would be necessary to broaden the scope of your claims to eliminate that language which I have underlined in red. Additionally, it would probably be necessary to eliminate and/or rewrite the language that is highlighted in blue. This could be accomplished by filing a reissue patent application. However, the filing of a reissue patent application would require that you surrender your existing patent. The reissue application would undergo a whole new examination process and there is a risk that you might lose your existing patent rights if the patent examiner rejects the claims in the reissue application. Moreover, there is no guarantee that the broader claims would be allowed. More importantly, there can be no assurance that the broader claims, if allowed, would be enforceable against the

LASER LOCK product.  Again, the language of your claims would be subject to interpretation, with the court looking at what is the "intended invention" when the original application was first filed.  Further, the patent examiner may uncover additional prior art that was not found in the prosecution of your original patent.  Any newly discovered prior art could have the effect of not only eliminating the possibility of patenting the broader claims, but may negate your original patent claim coverage.

I will be glad to address any questions that you may have regarding this matter, and I will discuss these issues in more detail when we meet this week.

Kindest regards,

Very truly yours,

ROBERT M. DOWNEY, P.A.

Robert M. Downey

RMD/km
Encls.